OPINION OF THE COURT
Burton G. Hecht, J.
Defendant moves to dismiss the instant classification and risk assessment proceeding under the Sex Offender Registration Act ([SORA] Correction Law § 168 et seq.), which became effective on January 21, 1996.
Essentially, SORA provides for three levels of notification to either law enforcement agencies or to the public, or both, depending on an assessment based upon specific State guidelines of the level of risk of "repeat offense” and danger to the public that the offender represents. The Act also authorizes public access to identifying information about all registrants, regardless of risk level, through a toll free "900” telephone number that was scheduled to begin operation on March 8, 1996.
Counsel’s primary contention is that his client should not be subjected to the registration requirements of the Act. Counsel argues that Mr. Nieves completed the maximum term of his underlying conviction for the offense of attempted rape in the first degree on or about November 14, 1994 which was prior to the effective date of the Act.
*348 Defense counsel further urges' that the numerical risk assessment instrument and accompanying guidelines promulgated by the Board of Examiners of Sex Offenders (in determining the level of risk) are arbitrary and capricious. In addition, counsel alleges that the Board has not offered clear and convincing evidence in support of its determination under risk factors numbered 11 through 13 and requests that an evidentiary hearing be afforded his client with respect to same. Counsel further requests that this court in assessing future risk of recidivism subtract 55 through 75 points for positive factors regarding Mr. Nieves’ future risk, in the same manner in which the Board adds points for negative factors of future risk.
With respect to counsel’s main contention, the court is of the opinion that this defendant is indeed subject to the requirements of New York’s Sex Offender Registration Act. As a threshold matter, SORA is applicable to those individuals who were on parole or probation for a sex offense or incarcerated and serving a sentence for a sex offense as of January 21, 1996, the effective date of the Act. (Correction Law §§ 168-f, 168-g.) On December 27, 1989, Mr. Nieves was sentenced to an indeterminate term of imprisonment of l2/s to 5 years upon his beforementioned conviction for attempted rape in the first degree. (Indictment No. 4487/89.) The above conviction was to run concurrently with a prior indeterminate sentence of one to three years for a conviction for criminal sale of a controlled substance in the third degree. (Indictment No. 885/89.) The New York State Department of Correctional Services received defendant on March 22, 1990, thus crediting him with 171 days of jail time, leaving Mr. Nieves with some 41/2 years remaining on his sentences.
The record reflects that defendant was paroled on the concurrent indeterminate sentences on September 25, 1992. Thereafter, on July 18, 1993 the Division of Parole declared Mr. Nieves delinquent by virtue of a new criminal arrest on gun possession charges. The running of the underlying 1989 sentence was interrupted as of the date of delinquency pursuant to Penal Law § 70.40 (3) (a). Thus, the amount of time owed to the maximum term of the attempted rape sentence was held in abeyance until his return to the custody of New York State on September 2, 1993. The defendant received credit for 46 days of jail time toward the 1993 weapons sentence. As of July 18, 1993, the defendant had 1 year, 2 months and 12 days remaining to serve on his original sentence.
*349 Subsequently, Mr. Nieves pleaded guilty to attempted criminal possession of a weapon in the third degree. On August 12, 1993, he was sentenced to an indeterminate term of incarceration of two to four years. The new sentence ran consecutively (by operation of law) to Mr. Nieves’ December 27, 1989 sentence. (Penal Law § 70.25.)
It is the court’s understanding that the balance of time defendant still owed on the attempted rape sentence was added to the maximum term on his 1993 gun sentence, resulting in a new adjusted maximum expiration date. (See, Penal Law § 70.30 [1] [b].)
Counsel for defendant contends that Penal Law § 70.30 (1) (b) specifies only the method for calculating the minimum and maximum terms of imprisonment for consecutive sentences with respect to parole or conditional release eligibility. Counsel makes the argument that Penal Law § 70.30 (1) (b) does not "aggregate” maximum terms of consecutive sentences for purposes other than for parole eligibility calculation. He contends that the Legislature did not intend such a result.
Thus, he urges that Mr. Nieves served the full five-year maximum term on the underlying sex offense and that sentence ended for all purposes other than determining defendant’s new maximum expiration date in December of 1994.
Petitioner’s attorney annexes a favorable lower court decision with respect to the issue of "aggregate” sentencing from the Erie County Supreme Court. (People v Roberson, Jan. 21, 1997, Tills, J.) The court in Roberson, however, does not specifically mention the "aggregate” sentencing provisions of Penal Law § 70.30 (1) (b) in its analysis.
It is the court’s opinion that the balance of time owed on the original conviction "aggregates” with the term of the subsequent consecutive sentence. The two sentences did not merge into one, rather the sentences "aggregated” to form new minimum and maximum terms. Thus, the 14 months remaining on the attempted rape conviction were added to the maximum term of 4 years on the weapons sentence, resulting in an "aggregate” maximum term. Mr. Nieves was held in continuous custody pursuant to both sentences until he was conditionally released on February 4, 1997. The defendant will in fact remain subject to both sentences until he reaches his maximum expiration date on September 27, 1998. Clearly, the defendant cannot claim that he had served the remaining term he owed to parole on the 1989 sentence by the effective date of *350 the statute. Mr. Nieves would have completed his original sentence, but for the new consecutive indeterminate term. He remained in continuous custody after being reincarcerated as a result of his new conviction while on parole on the attempted rape conviction. The court finds that Mr. Nieves was on parole for both the 1989 and 1993 sentences at the time the statute took effect, and thus, pursuant to Correction Law § 168-g (1) is subject to the notification requirements of the Act.
With respect to the issue as to whether the numerical risk methodology represents an arbitrary and capricious procedure for calculating risk assessment under the Act, the court determines that it does not, notwithstanding strong arguments put forth by counsel to the contrary.
Clearly, the New York State Division of Criminal Justice Services has the authority to develop rules and regulations to implement the provisions of the Act. As a result the drafting officials spent an inordinate amount of time and énergy in preparing an instrument that would be relevant and conform to the criteria set forth in the Act. Said guidelines were developed with the assistance of Ms. Kim English, the Director of the Office of Research and Statistics for the Colorado Division of Criminal Justice. The working draft included risk assessment criteria that found support in academic literature and are commonly used by sex offender experts.
At the time the suggested risk factors were provided to the Board, that agency modified the draft to achieve objectivity and to eliminate complexity. A review process took place for some two months and included testing the guidélines against a large sample of cases to provide accurate results. Thereafter, this work was further reviewed by a committee of New York professionals with diverse experience relating to the behavior and treatment of sex offenders. The final guidelines were based on commonly recognized factors associated with past, present and future criminal sexual behavior and included a commentary discussing the underlying principles and an explanation of the factors utilized.
Moreover, the guidelines used to assess risk level do not attempt to predict an offender’s future conduct, but merely recognize that certain factors are relevant in regard to such conduct and seek to pass this information to local authorities for their consideration. Factors including the circumstances surrounding the crime itself, whether violence was involved, the relationship between offender and victim and prior sex crimes are determinative criteria for an offender’s risk of re *351 cidivism. Other factors utilized by the Board to assess risk level are behavior while in prison, participation in treatment programs, and employment.
These guidelines although arguably somewhat broad in scope, cannot be deemed either vague or arbitrary, but are reasonable intrusions upon the individual’s privacy for the protection of society. It is apparent that the Board, through its statutory authority, has developed guidelines to implement the Act in a fair and consistent manner. Moreover, the court finds that there is an objective and rational basis for the classifications.
The court further notes that the Board’s determination of Mr. Nieves’ risk level is merely a recommendation. This court is empowered to make the final determination with respect to the risk level of the defendant. A victim’s statement as well as any materials submitted on behalf of the sex offender by counsel are appropriate and relevant to the court’s review.
With respect to the issue raised by defendant that the Board failed to offer clear and convincing evidence to support its findings under risk factors 11 through 13, the court will direct that an evidentiary hearing be held. The defendant has a right to appear with counsel at his side, submit documentary evidence and be heard. The defendant will be afforded ample opportunity to challenge the recommendations of the Board at that time.
Finally, counsel’s request that the court subtract points for positive factors with regard to defendant’s future risk is without precedent and is not discussed under the guidelines. That application is hereby denied.