OPINION OF THE COURT
Daniel P. Conviser, J.
Respondent Mustafa Rashid is the subject of a petition for sex offender civil management pursuant to article 10 of the Mental Hygiene Law. He moves here to dismiss the petition. Civil management under article 10 requires a finding that the respondent is a “detained sex offender” who “suffers from a mental abnormality.” (Mental Hygiene Law § 10.03 [q]; § 10.07 [d].) Respondent does not seek dismissal on the basis that he does not suffer from a mental abnormality or on the basis that he was not previously convicted of a sex crime. Rather, he claims that at no time during any of the relevant proceedings in this case has he been a “detained sex offender” as required by the statute. He makes two related arguments.
First, respondent asserts that at no time relevant to these proceedings was he serving a sentence for or under parole or postrelease supervision for a “sex offense” or a “related offense” as required by the statute. (See Mental Hygiene Law § 10.03 [g].) Second, respondent argues that he was required to be a detained sex offender under the statute at the time the petition in this case was filed, rather than on the earlier date which the State alleges controls in this matter. Since there is no factual dispute that the respondent was not, in fact, a detained sex offender when any of the three petitions in this matter were filed, respondent argues, the petition against him must be dismissed on this basis as well.
For the reasons stated below, with respect to respondent’s first claim, respondent’s motion is granted, the petition is *320 dismissed and the respondent will be ordered to be released from custody, as described at the end of this decision and order. Given this determination, the court has not reached the second claim made by respondent here.
Statement of Facts and Relevant Statutory Background
Article 10 of the Mental Hygiene Law establishes a comprehensive procedure to subject certain sex offenders to indefinite civil confinement or indefinite strict and intensive supervision and treatment after the completion of their prison terms (or certain other types of confinement not relevant here) for the commission of sex offense felonies or “sexually motivated” “designated felonies.”
Respondent’s Criminal History
Respondent was arrested on November 8, 1988 based on two separate incidents for which he was separately indicted. On January 6, 1992, he pleaded guilty to two counts of robbery in the first degree, burglary in the first degree, sodomy in the first degree, and rape in the first degree in satisfaction of those charges and was sentenced to an indeterminate 8-to-16-year prison term running from his 1988 arrest. He was released to parole supervision on July 8, 1999, after serving 11 years and 8 months of that sentence. On May 19, 2000, respondent was arrested and indicted based on three separate incidents. On December 12, 2001 he pleaded guilty to two counts of robbery in the third degree, for which he was sentenced to a 2-to-4-year term and one count of criminal possession of a weapon in the fourth degree for which he was sentenced to a one-year term, all of those terms to run concurrently. He was also charged in these cases with sexual abuse but did not plead guilty to any sexually related charge.
Mr. Rashid was released to parole supervision in 2006. His parole was violated in July of 2006 and he was returned to prison. In August of 2007, his parole was again revoked. Mr. Rashid was released to parole supervision again in February 2008. He was arrested for petit larceny in May 2008 and pleaded guilty. He was then sentenced to a definite sentence of imprisonment on that charge. He completed that sentence and was released from custody on October 31, 2008. His parole supervision term, with respect to his 2001 third degree robbery convictions, expired on November 4, 2008. According to the State’s petition, respondent also has a number of other criminal convictions for nonsexual offenses dating back to 1986. The initial petition in *321 this case, as outlined infra, was filed the day after the completion of Mr. Rashid’s parole term on November 5, 2008. In proceedings on the record in the instant matter, the State and the respondent have both indicated that with respect to respondent’s petit larceny conviction, although that conviction was a violation of the terms of his parole, his parole was never formally revoked.
Civil Management Proceedings in the Instant Case
The civil management process starts when agencies which confine or supervise sex offenders give notice to the State Office of Mental Health(OMH) that such offenders are nearing the end of their terms of confinement or supervision.[1] (Mental Hygiene Law § 10.05 [b] [hereafter initial interagency notice].) The category of offender for whom such notice is given is defined as a “detained sex offender.” (Mental Hygiene Law § 10.03 [g].) A “detained sex offender” under the statute comprises a number of categories of offenders. For the purposes of this motion the relevant definitions are as follows:
Mental Hygiene Law § 10.03 (g)
“ ‘Detained sex offender’ means a person who is in the care, custody, control, or supervision of an agency with jurisdiction, with respect to a sex offense or designated felony, in that the person is either:
“(1) A person who stands convicted of a sex offense as defined in subdivision (p) of this section, and is currently serving a sentence for, or subject to supervision by the division of parole, whether on parole or on post-release supervision, for such offense or for a related offense . . .
“(4) A person who stands convicted of a designated felony that was sexually motivated and committed prior to the effective date of this article.”
The term “related offense” is also a defined term under the statute:
“ ‘Related offenses’ include any offenses that are prosecuted as part of the same criminal action or proceeding, or which are part of the same criminal transaction, or which are the bases of the orders of commitment received by the department of cor *322 rectional services in connection with an inmate’s current term of incarceration.” (Mental Hygiene Law § 10.03 [Z].)
Notice by the relevant agency here, the Division of Parole, was given on September 29, 2008 and stamped received by OMH on September 30, 2008.[2] The notice indicated that the respondent “will be under the supervision of the NYS Division of Parole until his expiration of sentence, which occurs on 11/4/2008.” The statute provides that agencies with jurisdiction “shall seek to give such notice at least one hundred twenty days prior to the person’s anticipated release, but failure to give notice within such time period shall not affect the validity of such notice or any subsequent action, including the filing of a sex offender civil management petition.” (Mental Hygiene Law § 10.05 [b].) Initial interagency notice, under the statute, is not required to be provided to an offender who is being evaluated for civil management.
The next step in the process is for OMH to review various records concerning the offender to determine whether he should be referred to a “case review team” for evaluation. (Mental Hygiene Law § 10.05 [d].) The case review team is a group of three persons designated by OMH to conduct an additional review of records related to the offender to determine if a civil management petition should be filed. Where referral to the case review team is made, the respondent must be notified. (Mental Hygiene Law § 10.05 [e].) Here, the respondent was notified of referral to the case review team on October 6, 2008 (hereafter case review team notice).
The parties in this matter agree that at the time initial inter-agency notice was given under the statute on September 29, 2008 (pursuant to Mental Hygiene Law § 10.05 [b]) and at the time case review team notice was given to the respondent on October 6, 2008 (pursuant to Mental Hygiene Law § 10.05 [e]), the respondent was: (i) serving a local jail sentence in a New York City Department of Correction facility for petit larceny; (ii) under the jurisdiction of the Division of Parole with respect to his 2001 convictions for robbery in the third degree, and (iii) not subject to a finding that he had violated his parole.
*323 The case review team must determine whether or not the offender is a sex offender in need of civil management. If the case review team does not so find, then a sex offender civil management petition may not be filed. If the case review team makes an affirmative finding, then the Attorney General is authorized to file a sex offender civil management petition in a court of competent jurisdiction. (Mental Hygiene Law § 10.05 [f], [g]; § 10.06 [a].) Where the case review team finds that the respondent is a sex offender requiring civil management, it must provide notice of that fact to the Attorney General and the respondent “within [45] days of the commissioner receiving the notice of anticipated release” (Mental Hygiene Law § 10.05 [g]). The statute goes on to provide that “failure to do so within that time period shall not affect the validity of such notice or finding or any subsequent action, including the attorney general’s filing of a sex offender civil management petition subsequent to receiving the finding of the case review team.” (Mental Hygiene Law § 10.05 [g].)
Throughout all of these proceedings, it is clear under the statute that the only persons who may be subject to such reviews or to a petition for sex offender civil management are “detained sex offenders.” Here, the case review team provided notice to the Attorney General and respondent that it had determined that the respondent was a sex offender in need of civil management on October 17, 2008. As noted supra, Mr. Rashid was released from custody on October 31, 2008 and completed his parole supervision term for his 2001 robbery convictions on November 4, 2008.
The Attorney General filed an initial petition for sex offender civil management, as noted supra, on the following day, November 5, 2008. Article 10 provides that if the respondent is at liberty at the time a petition is filed, the court must order the respondent to be confined for purposes of conducting a probable cause hearing under the statute which must then generally commence within 72 hours. Here, this court issued such a securing order at the State’s request upon the filing of the State’s initial petition, since the respondent was at liberty when the petition was filed, and arranged with the parties to promptly conduct a probable cause hearing.
The State’s initial petition was dismissed by this court upon motion of the respondent because the State did not effect proper service upon the respondent or respondent’s counsel, as directed by the court. Respondent’s application for immediate release *324 from custody, however, was denied by this court pending the filing on the same day the petition was dismissed of a second petition by the State (the second petition). The State filed the second petition on November 13, 2008. Acting Supreme Court Justice Lewis Bart Stone conducted a probable cause hearing on November 19, 2008 and determined on that date that there was probable cause to believe the respondent was a sex offender requiring civil management. (Mental Hygiene Law § 10.06 [g].) Justice Stone also determined on that date that the respondent should continue to be confined rather than released pending trial.[3]
At the probable cause hearing conducted by Justice Stone, the parties raised the issue which the court here has determined should result in the State’s petition being dismissed. Justice Stone, after a discussion with the parties on the record regarding the matter, denied respondent’s motion. He determined that under article 70 of the Penal Law, respondent’s 1992 sex offense conviction and subsequent robbery conviction had merged to form a single sentence and that respondent was therefore a detained sex offender. During argument on the issue, which did not include any written submissions by the parties, neither party argued to the court that article 10 contained a specific definition of those “related offenses” which would subject an offender to civil management even though the offender was no longer serving a sentence for a sex offense. The petition before Justice Stone (the second petition) also mistakenly indicated that the respondent was serving a sentence in a New York City Department of Correction facility for a sex offense at the time case review team notice was given on October 6, 2008. As discussed more fully infra, that alleged sex offense, according to the second petition, was respondent’s “sexually motivated” 2001 conviction for criminal possession of a weapon in the fourth degree (a class A misdemeanor), which the second peti-
*325 tion mistakenly alleged was a “sexually motivated felony.”[4] In fact, as the parties agree, at the time case re-view team notice was given, respondent was serving a sentence for petit larceny.
Subsequent to Justice Stone’s decision, on December 16, 2008, the New York Court of Appeals decided the case of People v Buss (11 NY3d 553 [2008]). In Buss, as discussed in much more detail infra, the Court of Appeals held that where an offender is convicted of a sex crime and then later convicted of a nonsexual offense for which the offender receives a sentence consecutive to his sexual offense conviction, the two sentences, for purposes of the Sex Offender Registration Act (SORA), are deemed to have been “made into one” (11 NY3d at 557). The State’s argument, that respondent’s first claim asserting that he was not a detained sex offender at any time relevant to these proceedings should be rejected, is based on the Buss decision.
Subsequent to the probable cause hearing, respondent advanced a number of arguments for why the second petition should be dismissed.[5] This court granted respondent’s motion to dismiss the second petition on June 5, 2009 with leave to re-plead. The court granted respondent’s motion to dismiss the second petition because, as the State readily conceded, the allegations contained in the second petition did not allege a criminal conviction which would qualify respondent as a detained sex offender under the law. As alleged in the second petition:
“15. Respondent has two convictions for Robbery in the Third Degree and one conviction of Criminal Possession of a Weapon in the Fourth Degree. See MHL § 10.03 (f). These charges qualify him as a sex offender, in that the plea to Criminal Possession of a Weapon in the Fourth Degree was from an indictment which included a count charging a sexually motivated felony act in which the Respondent forcibly took money from the victim and during the *326 same criminal act touched the vagina of an eight month old girl and touched the breasts of a woman while masturbating. See 10.03 (p) (4). “16. Respondent is a detained sex offender, in that he stands convicted of a sex offense as defined in MHL § 10.03 (p), and was serving his sentence in a New York City Department of Corrections Facility for the commission of that offense when he was given notice pursuant to MHL § 10.05 (e). See MHL 10.03 (g). See Above Paragraph 15.”[6]
The court dismissed the second petition because respondent’s 2001 conviction for criminal possession of a weapon in the fourth degree (a class A misdemeanor) does not qualify as a “designated felony” under the statute. As outlined supra, an offender may be defined as a detained sex offender, inter alia, if they are in the care or custody of a designated agency for the commission of a “designated felony” which was “sexually motivated.” (See Mental Hygiene Law § 10.03 [g] [4], supra.) A designated felony is defined under the statute as one of a number of listed felonies under the Penal Law. (Mental Hygiene Law § 10.03 [f].) Since the crime of criminal possession of a weapon in the fourth degree is defined under the Penal Law as a class A misdemeanor (see Penal Law § 265.01) and is not included in the definition of a designated felony under article 10 (see Mental Hygiene Law § 10.03 [f]) it is obviously not a “designated felony.”
The only allegations in the second petition which asserted that the respondent was a detained sex offender arose from this misdemeanor conviction.[7] Thus, it was clear that on its face, the State’s petition did not allege any status which would qualify the respondent as a detained sex offender under article 10. Nor did the State at any point move to amend the allegations in its petition to assert a more viable theory.[8]
Upon dismissing the second petition, the court again granted leave to the State to replead over the objections of the respon-
*327 dent and again declined to release the respondent from custody-pending the filing of a third petition. The third petition was filed, as directed by the court, on June 10, 2009. This third petition no longer alleges that the respondent is a detained sex offender by virtue of his conviction for criminal possession of a weapon in the fourth degree in 2001. Rather, the petition alleges that the respondent is a detained sex offender by virtue of his conviction for rape in the first degree and sodomy in the first degree in 1992.[9]’[10]
It is nowhere alleged in the State’s petition that the respondent was a detained sex offender on the date that any of the petitions in this case were filed. There is no factual dispute that the respondent was not a detained sex offender on November 5, 2008 (the date the initial petition was filed), November 13, 2008 (the date the second petition was filed) or June 10, 2009 (the date the third petition was filed).
Conclusions of Law
In an article 10 proceeding, the State must prove the respondent is a detained sex offender who suffers from a mental abnormality by clear and convincing evidence. (Mental Hygiene Law § 10.07 [d].) As noted supra, the issues raised by the respondent here do not concern whether or not he suffers from a mental abnormality. Rather, the challenges made here are solely to whether the first prong of the statutory definition has been met, that is, whether the respondent is a detained sex offender.
*328 With respect to the first issue raised by respondent here, that is, whether the respondent was serving a sentence for a qualifying offense at the time initial interagency notice was given, the first issue is whether respondent’s motion must be denied because Justice Stone’s decision from the bench denying respondent’s motion on the same claim is the “law of the case” and controlling here.
The law of the case doctrine is a judicially crafted policy which urges courts to generally refuse to reopen matters that have already been decided by courts of concurrent jurisdiction. (People v Evans, 94 NY2d 499 [2000].) The “doctrine is designed to eliminate the inefficiency and disorder that would follow if courts of coordinate jurisdiction were free to overrule one another in an ongoing case.” (People v Evans at 504.) The sound policy reason for applying the rule is that once an issue has been judicially determined, that should be the end of the matter as far as judges and courts of concurrent jurisdiction are concerned. (Martin v City of Cohoes, 37 NY2d 162 [1975].) The doctrine presupposes that the parties to the litigation have fully litigated the issue in controversy. (People v Bilsky, 95 NY2d 172 [2000].) The concept has been described as “amorphous” because while it “directs a court’s discretion” it does not restrict a court’s authority. (People v Evans at 503, quoting Arizona v California, 460 US 605, 618 [1983].)
A well recognized exception to the doctrine exists, however, where there is a change in controlling legal authority following a judicial decision. (Town of Massena v Healthcare Underwriters Mut. Ins. Co., 40 AD3d 1177, 1179 [3d Dept 2007]; Brownrigg v New York City Hous. Auth., 29 AD3d 721 [2d Dept 2006]; Matter of Seltzer v New York State Democratic Comm., 293 AD2d 172, 174 [2d Dept 2002]; Lipovsky v Lipovsky, 271 AD2d 658 [2d Dept 2000], lv denied 96 NY2d 712 [2001].)
Although the procedural history of this matter is complicated, the issue the court is deciding here can be simply stated: Does the Court of Appeals decision in Buss control the determination of whether the respondent is a detained sex offender? Buss, as noted supra, was decided after Justice Stone’s decision. There is no way, obviously, that Justice Stone could have considered Buss at the time he ruled. Therefore, under the arguments advanced by the parties here, the change in controlling legal authority announced by the Court of Appeals in Buss furnishes an exception to the law of the case doctrine which would otherwise foreclose this court’s consideration of respondent’s motion.
*329 The court also believes that it would be inappropriate to deny respondent’s claims based on the law of the case doctrine here because the parties, in their brief argument before Justice Stone, did not fully litigate the question here. The petition before Justice Stone when he issued his ruling (the second petition), as noted supra, materially misstated the most important single fact at issue in this motion, that is, what the respondent’s status was at the time the State gave initial interagency notice and case review team notice. As noted supra, the second petition mistakenly asserted that the respondent was incarcerated for the commission of a sexually motivated felony at the time case review team notice was given when he was actually incarcerated for petit larceny.
The resolution of the important issue addressed here is one of first impression, on which there is no appellate authority. It was argued by the parties before Justice Stone, however, with no briefing. Neither party even apparently mentioned the definition of a “related offense” under the statute during their arguments, which, at least in this court’s view, is the controlling definition here. For all of these reasons, in the view of this court, the law of the case doctrine should not serve to foreclose consideration of respondent’s claims.
Turning to the merits, the maximum indeterminate sentence of imprisonment respondent received for his sexual offense convictions in 1992, which were imposed retroactive to the date of his arrest on those charges in 1988, expired in 2004. Respondent therefore argues that because the 1992 sexual offense conviction sentence expired in 2004, those convictions could not be used to classify him as a detained sex offender in 2008. The State argues that defendant’s conviction for robbery in the third degree in 2001, for which he was sentenced to an indeterminate term of 2 to 4 years, when added to his previous sexual assault convictions, resulted in an aggregate maximum sentence (including parole supervision) which expired on November 4, 2008. Since the State gave notice that the respondent was being considered for civil management prior to that date, the State maintains respondent was a detained sex offender at that time.
In deciding this claim, the court has assumed that the State’s position with respect to when notice that a respondent is a detained sex offender must be given is the correct one. That is, while the respondent asserts that he must have been a detained sex offender under the statute on the date the petition in this matter was filed (which he clearly was not), the State alleges *330 that it is sufficient that the respondent was a detained sex offender at the time initial interagency notice was given (Sept. 29, 2008). The court has not ruled on this aspect of respondent’s motion, but with respect to the first claim asserted by the respondent, will assume that the State’s position on this issue is correct.
The State’s argument as to why respondent’s subsequent nonsexual offense convictions should serve to extend the time of his sexual offense convictions and therefore bring him under the reach of article 10 relies, as noted supra, upon the holding of the Court of Appeals in People v Buss (11 NY3d 553 [2008]). In Buss, the Court of Appeals held that where an offender is convicted of a sex crime and later convicted of a nonsexual offense for which the offender receives a sentence consecutive to his sexual offense conviction, the two sentences, for purposes of the Sex Offender Registration Act, are deemed to have been “made into one.” “[F]or SORA purposes a prisoner serving multiple sentences is subject to all the sentences, whether concurrent or consecutive, that make up the merged or aggregate sentence he is serving.” (11 NY3d at 557-558.) The defendant in Buss was convicted of a sex crime in 1983 for which he received a 2-to-6-year indeterminate term. He was then convicted of attempted murder while on parole in 1987 and sentenced to a consecutive indeterminate term of 10 to 20 years. When he was released in 2002, the Court held, Buss was still serving a sentence for his 1983 sex crime and thus still subject to the provisions of SORA, even though the maximum term of his sexual offense conviction had expired 13 years earlier in 1989.[11]
The Court, in reaching its conclusion, largely relied upon the provisions of Penal Law § 70.30 (1) (b) which provide that when a defendant is serving two or more indeterminate terms which run consecutively, the minimum periods and maximum terms of those sentences are each respectively added together to form an aggregate minimum period of imprisonment and an aggregate maximum term of imprisonment. While acknowledging that the primary purpose of these calculations was to determine an offender’s parole eligibility date, the Court found it “reasonable *331 to apply section 70.30 to the question of whether a prisoner who has been given multiple sentences is subject to all his sentences for the duration of his term of imprisonment.” (11 NY3d at 557.)
The Court also grounded its holding on policy considerations. The Court noted that the primary purpose of SORA was to protect the public from the recidivism danger posed by sex offenders and held that
“[cjommon sense and experience dictate that a defendant’s conduct while on parole is a reliable predictor of the risk he poses to society. . . . It is consistent with SORA’s aims that Buss was required to identify himself as a sex offender when ultimately released from prison, even though his sex offense sentence would have expired before SORA became effective had he not committed his later crime.” (Id. at 558.)[12]
In the view of this court, it is clear that Buss is not applicable to article 10 of the Mental Hygiene Law because article 10 contains its own rule for determining which sentences, other than sentences for sex offenses, “count” in determining an offender’s eligibility for civil management. Thus, in the court’s view, applying the Buss rule to article 10 would be clearly contrary to the intent of the legislature in enacting the statute. In this respect, article 10 and SORA contain a crucial distinction.
SORA was enacted in 1995 and became effective in 1996. It has gone through repeated and extensive revisions since that time, the most significant being a substantial rewrite of the statute in 1999. Although not cited in the Buss decision, the statutory language of SORA, as it has been modified through the years, provides no clear answer regarding the sentence calculation question which was addressed by the Court of Appeals in Buss.
Article 10 of the Mental Hygiene Law, however, defines which sentences, other than sentences for sex crimes or sexually motivated crimes “count” in determining whether a person is a *332 detained sex offender. As noted in the definition of a “detained sex offender” (supra), in order to be subject to the statute, one must be “currently serving” a sentence for a “sex offense” (a defined term under the statute) or subject to parole supervision for such a sex offense or a “related offense.” (See Mental Hygiene Law § 10.03 [g] [1].) As noted supra, the statutory definition of a related offense
“include [s] any offenses that are prosecuted as part of the same criminal action or proceeding, or which are part of the same criminal transaction, or which are the bases of the orders of commitment received by the department of correctional services in connection with an inmate’s current term of incarceration.” (Mental Hygiene Law § 10.03 [Z].)
In the court’s view, it is the definition of a “related offense” which is controlling here. That definition was obviously inserted into the statute to define which sentences, other than sentences for sex offenses, could qualify a person as a detained sex offender. Unlike the SORA statute, the legislature, in enacting article 10, explicitly defined which offenders, other than offenders serving a sentence for a sex crime, could be subject to its provisions. In the definition, the legislature first indicated that if a sentence was for an offense that was part of the same criminal transaction as a sex offense, that sentence could qualify an offender for civil management. Thus, for example, if an offender received a sentence for sexual abuse and robbery as part of one criminal transaction and the robbery sentence had a longer term than the sexual abuse sentence, the offender could become subject to civil management until the robbery sentence was completed.
The legislature also added one final type of sentence which could bring an offender into the eligibility window of the statute. Those are sentences which are “the bases of the orders of commitment received by the department of correctional services in connection with an inmate’s current term of incarceration.” (Mental Hygiene Law § 10.03 [Z].) This provision is also one which is easily understood. If at the time a notice is given under article 10, an offender is serving a state prison sentence, and the prison sentence does not concern a sex offense at all, notice is also proper under article 10. The reference in the definition to the “department of correctional services” clearly refers to the State Department of Correctional Services, which is an “agency with jurisdiction” under the statute. (See Mental *333 Hygiene Law § 10.03 [a].) That reference clearly does not include the New York City Department of Correction.
In defining a “related offense” under the statute, the legislature obviously defined the time period within which the State could move to subject an offender to civil management. An offender could be subject to civil management while serving a sentence for a sex offense (whether in prison or on parole or postrelease supervision). An offender could be subject to civil management while serving a sentence for an offense which was part of the same criminal transaction. Finally, even if the sentence an offender was under did not so qualify, civil management notice could still be given if the defendant was actually incarcerated under a commitment order to the State Department of Correctional Services for any crime, whether related to the sex offense or not.
Absent any of these situations, the legislature determined, civil management notice could no longer be given. That is, article 10, quite rationally, establishes a cut-off, after which an offender can no longer be brought into the civil management system. Persons past the cut-off are those who are no longer serving any sentence, or persons who are on parole or post-release supervision, probation or serving a local jail term, but for a crime which is neither a sex offense nor an offense which was part of the same criminal transaction as a sex offense.
The respondent, clearly, fits into this final category. At the time initial interagency notice and case review team notice were given, he was serving a local jail sentence for petit larceny. He was still under parole supervision for his robbery convictions (which were not sex offenses), but he was not serving a sentence for a sex offense or an offense that was part of the same criminal transaction as a sex offense. Moreover, at the time notice was given, although his petit larceny conviction was obviously a violation of the terms of his parole, the parties agree that no such violation had been found. In no respect was he incarcerated by or under an order of commitment to the State Department of Correctional Services at the time notice was given. In no respect, by the plain terms of the statute, could he be made subject to article 10.
In the court’s view, the argument that Buss rather than the provisions of article 10 are controlling here is unpersuasive. As the Court of Appeals noted in Buss, Penal Law § 70.30 (1) (b) was enacted in order to calculate parole eligibility dates. The
*334 statute was last modified in 1995.[13] Obviously, the legislature had no inkling at that time that this provision might be used to calculate whether sex offenders under a bill enacted 12 years later, which had not even been introduced at the time, would be eligible for civil management. Similarly, because Buss was decided subsequent to the enactment of article 10, there is no way that the legislature, in enacting article 10, could have anticipated that a controlling legal doctrine created more than a year and a half after article 10 was enacted, might then be used to create an article 10 eligibility rule which was different than the rule the legislature had written. The legislature created its own rule for determining which offenders may be made subject to civil management in the article 10 legislation. It is axiomatic, of course, that in construing a statute, courts should look to the intent of the legislature in enacting the law. (Carney v Philippone, 1 NY3d 333 [2004], rearg denied 2 NY3d 794 [2004].)
Where a general and a specific provision of a statute address the same matter, like the general Penal Law provision and the specific mandate of article 10 here, it is the specific enactment of the legislature, rather than any general rule, which is controlling:
“It is a well established principle in the construction of statutes that, whenever there is a general and particular provision in the same statute, the general does not overrule the particular but applies only where the particular enactment is inapplicable. The particular provision, in other words, is considered in the nature of an exception to the general where the two are incompatible, and so far as the particular intention is applicable, the general intention yields.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 238, Comment; see also People v Lawrence, 64 NY2d 200 [1984]; People v Mobil Oil Corp., 48 NY2d 192 [1979].)
Construing Buss as controlling here would also violate another familiar maxim of statutory construction — that a court should assume that every word in a statute has a meaning and was inserted into the statute for a purpose. (See Matter of Bliss v Bliss, 66 NY2d 382 [1985]; Direen Operating Corp. v State Tax Commn., 46 AD2d 191 [3d Dept 1974]; Statutes § 231.) The definition of a “related offense” was obviously inserted into article 10 for the sole purpose of defining which convictions and sen- *335 fences, other than convictions and sentences for sex offenses themselves, could serve to make an offender eligible for civil management. Treating Buss rather than article 10 as controlling with respect to which convictions and sentences would make an offender eligible for civil management would treat the definition of “related offenses” under the statute as surplusage with no meaning or purpose.
The policy reasons behind the Buss decision, in the court’s view, while relevant here, also do not apply with the same force to article 10 proceedings. In Buss (at 558), as noted supra, the Court held that “[c]ommon sense and experience dictate that a defendant’s conduct while on parole is a reliable predictor of the risk he poses to society” and thus held that extending SORA eligibility to nonsexual offense sentences (which are also parole violations) would protect public safety.
In article 10 cases, however, the question is not whether the respondent, in general, can be said to pose a risk to society but whether the respondent currently suffers from a mental abnormality. An offender’s risk of committing a new sex offense is, of course, highly relevant in making a mental abnormality determination. Whether a respondent has violated the conditions of his parole or committed a new nonsexual offense may also be highly relevant in making that determination in many cases. On the other hand, a given parole violation or new offense may have little or no probative value in determining whether a respondent suffers from a mental abnormality. In the instant case, for example, respondent’s petit larceny conviction might or might not be probative with respect to whether he suffered from a “congenital or acquired condition, disease or disorder that affects [his] emotional, cognitive, or volitional capacity . . . in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in [him] having serious difficulty in controlling such conduct,” the relevant determination to be made under article 10. (See Mental Hygiene Law § 10.03 [i].) Indeed, in order to meet the requirements of substantive due process, determinations under article 10 must be based on more than simply an offender’s overall dangerousness. (Kansas v Crane, 534 US 407 [2002].)
The consequences of coverage under SORA and a finding of a mental abnormality under article 10 are also radically different. Coverage under SORA requires that an offender register with law enforcement and authorizes various levels of community notification depending on an offender’s risk level. The Buss
*336 Court (at 558) held that its application of the Penal Law’s parole eligibility calculations to determine whether the defendant was required to register under SORA simply required the defendant to “identify himself as a sex offender.” In People v Knox (12 NY3d 60 [2009]), the Court of Appeals held that while registrants under SORA have a constitutionally protected liberty interest in not being inaccurately classified, that interest does not rise to the level of a “fundamental right” for purposes of substantive due process analysis. Conversely, “[i]nvoluntary civil confinement ‘may entail indefinite confinement, [which] could be a more intrusive exercise of state power than incarceration following a criminal conviction’ ” (Mental Hygiene Legal Serv. v Spitzer, 2007 WL 4115936, *6, 2007 US Dist LEXIS 85163, *21 [SD NY, Nov. 16, 2007], affd sub nom. Mental Hygiene Legal Servs. v Paterson, 2009 WL 579445, 2009 US App LEXIS 4942 [2d Cir, Mar. 4, 2009], quoting Project Release v Prevost, 722 F2d 960, 971 [2d Cir 1983]). “[F]reedom from physical restraint ‘has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action’ ” (Kansas v Hendricks, 521 US 346, 356 [1997], quoting Foucha v Louisiana, 504 US 71, 80 [1992]).
It is also, of course, a familiar canon of statutory construction that “[a] statute whose tendency is toward the restraint of the personal liberty of the individual is to be strictly construed in favor of the individual.” (Statutes § 314, Comment.) “[T]hat interpretation should be given conflicting provisions of a penal statute which best protects the rights of a person charged with an offense.” (Statutes § 271 [e], Comment.) Article 10 is not a criminal statute, but it is obviously a statute which may act to restrain liberty. It was reasonable for the Court of Appeals in Buss to apply the Penal Law’s parole eligibility calculation provisions to a statute which does not restrict personal liberty. It would be another matter entirely to use a statute which was enacted by the legislature to calculate parole eligibility dates to subject a person to possible lifetime confinement under an unrelated noncriminal statute, especially when the statute defining the conditions under which such confinement may be imposed clearly provides otherwise.
Finally, while the logic of Buss, as the State argues, could certainly be applied to article 10, the Buss holding itself was carefully limited to SORA. As the Buss Court clearly stated: “We hold that for SORA purposes a prisoner serving multiple sentences is subject to all the sentences, whether concurrent or *337 consecutive, that make up the merged or aggregate sentence he is serving.” (11 NY3d at 557-558 [emphasis added].) Thus, construing the statute as respondent urges here would not in any respect be contrary to the holding of the Court in Buss.
In opposition to respondent’s motion, the State cites the decision of the Chemung County Supreme Court in State of New York v Feivish (22 Misc 3d 1137[A], 2009 NY Slip Op 50476[U] [Mar. 23, 2009, Mulvey, J.]) in which a motion by the respondent alleging similar grounds as are alleged here was denied. Justice Mulvey denied respondent’s motion in that case on two grounds. He found, unlike the instant matter, that the respondent was actually serving a sentence for a “related offense” under the statute, promoting prison contraband, when the proceeding was brought and denied respondent’s motion on that basis. That holding, in the view of this court, was obviously correct. The Feivish court, however, also concluded that Buss was controlling with respect to the issue addressed here and thus reached a conclusion contrary to this court on that matter. Respondent also cites a decision from the bench which was made concerning whether Buss controls in determining whether an offender is a “detained sex offender” under article 10 by Justice Van Strydonck, Monroe County Supreme Court in State of New York v McFadden on February 6, 2009. The court has reviewed both the Feivish and McFadden decisions. For the reasons stated above, the court respectfully disagrees with the portion of those holdings which found that Buss (rather than, as this court has argued here, the language of article 10) controls which offenders may be determined to be “detained sex offenders” under the statute.
The State, finally, has asserted on repeated occasions during oral arguments in this case that the respondent should not be ordered to be released because he is a dangerous person. Justice Stone found that there was probable cause to believe that the respondent suffered from a mental abnormality. The court has no disagreement with that finding. Nor does the court disagree with the obvious fact that the respondent has a long history of criminal offenses, including sex crimes. The issue here, however, is not whether Mr. Rashid suffers from a mental abnormality. The issue is whether he is subject to the provisions of article 10. Because the court believes that Mr. Rashid is clearly not a detained sex offender under the statute, the court believes it has no option other than to dismiss the petition and order respondent’s release from custody.
*338 With respect to the respondent’s release, article 10 provides that “[t]he attorney general may, in the appellate division of the supreme court, seek a stay of any order under this article releasing a person under this article.” (Mental Hygiene Law § 10.13 [a].) It seems obvious that this provision was inserted into the statute to allow the appellate courts, upon the State’s motion, to quickly review any order by a trial court releasing a respondent in order to help ensure that potentially dangerous offenders were not incorrectly released from custody. The use of such an initial review for purposes of making an initial stay determination would seem to be particularly appropriate in a case like this, where this court has made a determination on which other trial courts have disagreed and on which there is no appellate authority.
In this case, the State has already indicated that, in the event respondent’s motion is granted, it intends to seek a stay of any release order issued by this court. In order to allow the State to properly exercise this option, the court believes a brief stay of an order releasing the respondent, for the purpose of allowing the State to seek a stay of respondent’s release in the Appellate Division, may be appropriate. The parties will be contacted forthwith and directed to appear in this part for the purpose of determining whether such an initial stay by this court should be granted and if it is granted, how long such a stay should last.
For all of these reasons, respondent’s motion to dismiss the petition on the ground that he was not a detained sex offender at the time either initial interagency notice or case review team notice was given is granted. Respondent will be directed to be released from custody in a subsequent order of this court after hearing from the parties.

. Such notifying agencies are denominated under the statute as “[a]gen-c[ies] with jurisdiction,” defined, in relevant part, as “the agency responsible for supervising or releasing such person.” (Mental Hygiene Law § 10.03 [a].)

. See exhibit B to State’s order to show cause that respondent is a sex offender in need of “civil management” (dated June 9, 2009 [hereafter the third petition]). The State’s petition mistakenly cites this date as “September 9, 2008” but the exhibit indicates that the date is September 29, 2008. (See third petition V 28.)

. Following a finding of probable cause, article 10 respondents proceed to a jury trial (or, if respondent so elects, a bench trial) to determine whether the State has proved by clear and convincing evidence that the respondent is a detained sex offender who suffers from a mental abnormality. If the jury makes an affirmative finding, the court then holds a dispositional hearing to determine whether the respondent should be subject to confinement in a secure treatment facility or subject to a regimen of strict and intensive supervision and treatment (commonly referred to as SIST). (See Mental Hygiene Law § 10.07.)

. See second petition HIT 15, 16 (emphasis added).

. In New York County, where a sex offender civil management petition is filed with respect to an underlying sexual offense conviction where the justice who presided over that conviction is no longer serving, the case is referred to this part for calendar management and pretrial proceedings. This part then either refers cases for probable cause hearings and trials to other justices or conducts those hearings and trials. Where a proceeding is adjourned by this part to a second part for a probable cause hearing, as occurred in this case, the case is then adjourned back to this part for further proceedings and motion practice pending trial. It was through this procedure that Justice Stone handled the probable cause hearing in this case, but the case was then referred back to this part for additional motions pending trial.

. As noted supra, the allegation that the respondent was serving a jail sentence on October 6, 2008 for his 2001 conviction for criminal possession of a weapon in the fourth degree was inaccurate. He was in fact serving a sentence for a 2008 misdemeanor conviction for petit larceny.

. See second petition UH 15-16, discussed supra.

. The State opposed the dismissal of the second petition on two grounds. First, the State argued that the probable cause finding on November 19, 2008 meant that no further challenge to the petition could be considered by the court. Second, the State argued that the fact that it was alleged in the State’s petition that the respondent was a detained sex offender was sufficient under the law to allow the petition to be used as the basis for further proceedings, *327 even if the petition did not state a correct basis for alleging that the respondent was a detained sex offender.

. The State’s new theory, as alleged in the third petition, is one that the State has been arguing is the correct basis for alleging that the respondent is a detained sex offender for a number of months. The effect of the court’s dismissal of the second petition and the State’s filing of the third petition was to conform the pleadings in the petition to the allegations which both of the parties here had been assuming would constitute the basis for respondent’s trial.

. The State’s position as to the date under the statute on which notice must he given that the respondent may be a detained sex offender has changed during the pendency of these proceedings. In the first and second petitions, the State alleged that the determination of whether a respondent is a detained sex offender under the statute is based on the date that the case review team notice is given (pursuant to Mental Hygiene Law § 10.05 [e]) (see second petition 1116). Here, that date was October 6, 2008. In the third petition, filed on June 10, 2009, the State for the first time asserted that the controlling date is not the date the case review team notice is given, but the date that initial interagency notice is given, pursuant to Mental Hygiene Law § 10.05 (b). (See third petition 1i 16.) That date, as noted supra, was one week earlier, on September 29, 2008.

. SORA had also not been enacted at the time the sex offender conviction for defendant Buss had expired in 1989, thus Buss also claimed he could not be subject to SORA because the statute, when it was enacted in 1995, did not apply retroactively to offenders whose maximum terms of imprisonment had already expired.

. Though not cited in the Court’s decision in Buss, a number of lower courts have considered the question of whether SORA eligibility may be extended by consecutive terms for nonsexual offenses. The results have not been uniform. (See People v Curley, 184 Misc 2d 692 [Sup Ct, Monroe County 2000], affd 285 AD2d 274 [4th Dept 2001], lv denied 97 NY2d 607 [2001]; People v Nieves, 172 Misc 2d 346 [Sup Ct, Bronx County 1997] [both applying a rule consistent with the Buss decision]; People v Roberson, 172 Misc 2d 486 [Sup Ct, Erie County 1997] [reaching the contrary conclusion].)

. L 1995, ch 3, § 13 (enacting the Sentencing Reform Act of 1995).