[900 NE2d 964, 872 NYS2d 413]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT BUSS, Appellant.

Argued November 19, 2008; decided December 16, 2008

## POINTS OF COUNSEL

*Legal Aid Society of Nassau County,* Hempstead (*Jeremy L. Goldberg* and *Kent V. Moston* of counsel), for appellant. I. The Board of Examiners of Sex Offenders had no authority to deem appellant subject to Sex Offender Registration Act (SORA) assessment, as the sentence for the only crime being used to apply that statute to him would have expired many years before SORA's enactment, and it was consecutive to his subsequent sentence. (*People v Ramirez,* 89 NY2d 444; *People v Windham,* 37 AD3d 571, 10 NY3d 801; *People ex rel. Maurer v Jackson,* 2 NY2d 259.) II. The substance of appellant's plea allocution in 1983 establishes that he never in fact committed the crime which subsequently rendered him liable to Sex Offender Registration Act (SORA) classification, and so he should not have been made subject to SORA at all, or in the alternative should have been designated as no more than a level one offender. (*People v Windham,* 10 NY3d 801; *Matter of North v Board of Examiners of Sex Offenders of State of N.Y.,* 8 NY3d 745; *Kennedy v Mendoza-Martinez,* 372 US 144; *Doe v Pataki,* 120 F3d 1263; *People v David W.,* 95 NY2d 130; *People v Lopez,* 71 NY2d 662; *People v Thomas,* 159 AD2d 529; *People v Kulzer,* 199 AD2d 783; *People v Zeth,* 148 AD2d 960; *People v Johns,* 201 AD2d 337, 83 NY2d 854.) III. The Appellate Division erred in affirming County Court's denial of any relief to appellant in connection with the 1987 presentence report. IV. In light of Sex Offender Registration Act's (SORA) strictly prophylactic purpose, as a matter of law appellant should not have been made subject to SORA's most onerous terms when all forward-looking evidence presented at his SORA hearing demonstrated that he posed no reasonable risk of reoffending. V. Inasmuch as the Sex Offender Registration Act Risk Assessment Guidelines neither have the force of law nor are narrowly tailored to the statute's ostensible purpose, the Appellate Division below abdicated its judicial responsibilities in relying on nothing more than those guidelines in affirming the level three risk assessment given to appellant. (*Doe v Pataki,* 940 F Supp 603, 120 F3d 1263; *People v Windham,* 10 NY3d 801; *People v Ford,* 86 NY2d 397; *People v Hands,* 37 AD3d 441; *Doe v Pataki,* 3 F Supp 2d 456; *People v Kennedy,* 7 NY3d 87.)

*Kathleen M. Rice, District Attorney,* Mineola (*Margaret E. Mainusch, Peter A. Weinstein* and *Tammy J. Smiley* of counsel), for respondent. I. Because defendant's sentence for sexual abuse was aggregated with his later sentence for another crime, and

he was, therefore, still serving his sentence for a sex offense when the Sex Offender Registration Act took effect, he is properly subject to the law's registration requirements. (*Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Windham*, 37 AD3d 571, 10 NY3d 801; *Doe v Pataki*, 120 F3d 1263; *People v Torres*, 51 AD3d 531; *People v Curley*, 285 AD2d 274; *People v Nieves*, 172 Misc 2d 346; *People v Roberson*, 172 Misc 2d 486; *People v Merejildo*, 45 AD3d 429; *People v Cintron*, 46 AD3d 353, 10 NY3d 804; *People v Ramirez*, 89 NY2d 444.) II. Defendant's allegation that the Sex Offender Registration Act (SORA) should not apply to him because he was not guilty of sexual abuse was not reviewable in the SORA proceeding. (*Matter of Josey v Goord*, 9 NY3d 386; *Matter of Hunter*, 4 NY3d 260; *O'Brien v City of Syracuse*, 54 NY2d 353; *People v Taylor*, 65 NY2d 1; *People v Thomas*, 53 NY2d 338; *People v Seeber*, 4 NY3d 780.) III. Defendant's self-serving statements at his 1983 plea allocution provide no basis for overturning the Sex Offender Registration Act court's adjudication of him as a level three offender. (*People v Vasquez*, 49 AD3d 1282; *People v Miller*, 48 AD3d 774; *People v Brown*, 45 AD3d 1123; *People v Agard*, 35 AD3d 568; *Ashe v Swenson*, 397 US 436; *Buechel v Bain*, 97 NY2d 295; *Doe v Pataki*, 3 F Supp 2d 456; *People v Hetrick*, 80 NY2d 344; *People v Thornton*, 34 AD3d 1026; *People v Jordan*, 31 AD3d 1196.) IV. Defendant is not entitled to an order redacting the victim's version of the crime from the 1987 presentence report. (*People v Wosu*, 256 AD2d 1247; *People v Wright*, 206 AD2d 337; *People v Perry*, 36 NY2d 114; *People v Thomas*, 2 AD3d 982; *United States v Tucker*, 404 US 443; *Hili v Sciarrotta*, 140 F3d 210; *People v Farrar*, 52 NY2d 302.) V. Defendant's challenges to the Sex Offender Registration Act Guidelines in general and to their application to him in particular are without merit. (*People v Windham*, 10 NY3d 801; *People v Brown*, 302 AD2d 919; *Hernandez v Robles*, 7 NY3d 338; *Hope v Perales*, 83 NY2d 563; *People v Castleberry*, 43 AD3d 1369.)

## OPINION OF THE COURT

Pigott, J.

Following a March 1983 incident in which he violently assaulted a neighbor, Robert Buss pleaded guilty to one count of sexual abuse in the first degree and one count of assault in the second degree, in satisfaction of all charges. He was sentenced to 2 to 6 years' imprisonment on each count, to run concur-

rently. In February 1987, while on parole supervision, Buss attacked and stabbed an acquaintance in her home. He pleaded guilty to attempted murder in the second degree, in full satisfaction of an indictment that included first-degree rape and first-degree sodomy counts. He was sentenced, as a second violent felony offender, to 10 to 20 years' imprisonment.

When Buss was released in 2002, the Board of Examiners of Sex Offenders (the Board) determined that he was required to register under the Sex Offender Registration Act (SORA), citing his 1983 sexual abuse conviction. The Board calculated a total risk assessment score of 80 points, on the basis of the 1983 incident, making Buss presumptively a level two (moderate risk) offender (see Correction Law § 168-*l* [6]). The Board however recommended an upward departure to level three (high risk), because of "the brutal sexual and physical assault" Buss committed in 1987. Buss filed an objection to the Board's recommended SORA assessment level, arguing, among other things, that SORA does not apply to him because his sentence for the sexual abuse conviction "was due to expire" before SORA became effective in 1996.

County Court rejected that argument and designated Buss a level three sex offender. The court agreed with the Board's level three recommendation, based on two overrides, "offender inflicted serious physical injury or caused death" and "offender has made a recent threat that he will reoffend by committing a sexual or violent crime." (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, Overrides 2, 3 [Nov. 1997].)

The Appellate Division affirmed County Court's level three designation (44 AD3d 634 [2007]). Noting the serious physical injury Buss had inflicted on his first victim, the Appellate Division concluded that County Court had properly determined that Buss was a presumptive level three sex offender by application of the serious injury override. Without discussion, the Appellate Division rejected as meritless Buss's claim that SORA did not apply to him in the first instance. We granted leave (10 NY3d 757 [2008]) and now affirm.

Buss argues in this Court that he is not subject to SORA because his 1983 sentence was "due to expire" or "scheduled to expire" before SORA became effective. He does not dispute that his 1987 sentence ran consecutively to the undischarged part of his 1983 sentence (see Penal Law § 70.25 [2-a]). He contends that because the undischarged portion of the sentence he

received in 1983 was completed in 1989, he was no longer serving a sentence for a sex crime.*

The People do not argue that Buss would be subject to SORA even if he were no longer serving a sentence for his sexual abuse conviction when SORA became effective. Instead, they rely on Penal Law provisions which, they argue, show that Buss was still serving a sex offense sentence when SORA took effect. The People cite Penal Law § 70.30 (1) (b), which directs how terms of imprisonment are to be calculated when a defendant is serving multiple, indeterminate sentences that run consecutively.

Penal Law § 70.30 provides for the calculation of terms of imprisonment by merging of concurrent sentences and addition of consecutive sentences. Although the primary function of the statute is to allow for the ready calculation of parole eligibility, we find it reasonable to apply section 70.30 to the question of whether a prisoner who has been given multiple sentences is subject to all his sentences for the duration of his term of imprisonment.

Concurrent and consecutive sentences are governed by different methods of calculation. If two or more indeterminate sentences are consecutive, then, with certain limitations not relevant here, the minimum and maximum sentences are added to form aggregate minimum and aggregate maximum wholes (Penal Law § 70.30 [1] [b]). In concurrent sentencing, on the other hand, "[t]he maximum term or terms of the indeterminate sentences and the term or terms of the determinate sentences shall merge in and be satisfied by discharge of the term which has the longest unexpired time to run" (Penal Law § 70.30 [1] [a]). Practically, the difference in prison term may be very significant to a defendant, depending on whether he was sentenced to consecutive or concurrent sentences. Nevertheless, in both situations, the Penal Law provides for a method whereby two or more sentences are *made into one*: the result either way is a single, indeterminate sentence. Underlying Penal Law § 70.30 is the proposition that concurrent sentences and consecutive sentences yield single sentences, either by merger or by addition.

We hold that for SORA purposes a prisoner serving multiple sentences is subject to all the sentences, whether concurrent or consecutive, that make up the merged or aggregate sentence he

---

* According to his parole report, when Buss was declared delinquent in February 1987, he owed 2 years and 14 days.

is serving. Buss was therefore still serving a sentence for his 1983 sex crime at the time SORA became effective in 1996.

The primary goals of SORA, one of which is to "protect the public from the danger of recidivism posed by sex offenders" (*People v Stevens*, 91 NY2d 270, 275 [1998] [internal quotation marks omitted], quoting Legislative Purpose or Findings, L 1995, ch 192, § 1), are best served by recognizing that a person who is returned to prison while on parole for a sex offense continues to be subject to his sex offense sentence for the duration of the aggregate sentence. Common sense and experience dictate that a defendant's conduct while on parole is a reliable predictor of the risk he poses to society. In 1983, Buss committed a crime of a type that SORA subsequently denominated a sex offense. In 1987, while on parole, he demonstrated himself still willing to disregard the law. It is consistent with SORA's aims that Buss was required to identify himself as a sex offender when ultimately released from prison, even though his sex offense sentence would have expired before SORA became effective had he not committed his later crime.

Defendant's remaining contentions before us lack merit. Consequently we affirm his level three designation.

The order of the Appellate Division should be affirmed, without costs.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order affirmed, without costs.