[894 NYS2d 605]

In the Matter of STATE OF NEW YORK, Respondent, v LITTLE LUKE KK., Appellant.

Third Department, February 18, 2010

**APPEARANCES OF COUNSEL**

*Sheila E. Shea, Mental Hygiene Legal Service*, Albany (*Shannon Stockwell* of counsel), for appellant.

*Andrew M. Cuomo, Attorney General*, Albany (*Kathleen M. Treasure* of counsel), for respondent.

**OPINION OF THE COURT**

KAVANAGH, J.

In March 1983, respondent was convicted by verdict in Albany County of rape in the first degree and subsequently sentenced to $12^{1}/_{2}$ to 25 years in prison.[1] While incarcerated, respondent, as a result of mental health issues, was transferred to psychiatric hospitals operated by the Office of Mental Health (hereinafter OMH) on nine separate occasions where he received in-

---

1. Respondent, who had two prior convictions for sex offenses, was charged with raping his girlfriend's mother in her home.

patient care and treatment.[2] On each occasion, while at an OMH facility, respondent was charged with engaging in inappropriate sexual behavior and later returned to the custody of the Department of Correctional Services (hereinafter DOCS). Finally, on May 20, 2004, respondent was transferred for the last time by DOCS to OMH and admitted to the Central New York Psychiatric Center on an involuntary basis.

Two months later, respondent, while still a patient at Central New York Psychiatric Center, was conditionally released by DOCS to the Division of Parole and, as a condition of his parole, placed in the Capital District Psychiatric Center on an involuntary basis pursuant to Mental Hygiene Law § 9.27. In 2005, while still on parole, respondent's patient status was converted from involuntary to voluntary pursuant to Mental Hygiene Law §§ 9.13 and 9.21. Two years later, in August 2007, the Division of Parole notified the Attorney General and the Commissioner of Health that respondent was a sex offender about to be released from parole supervision and, due to his psychiatric history, may require civil confinement (*see* Mental Hygiene Law § 10.05 [b]). In response to this notification, a licensed psychologist, on behalf of OMH, examined respondent and diagnosed him with a mental abnormality based upon his finding that respondent suffered from an antisocial personality with a schizoaffective bipolar disorder.[3] When OMH's case review team determined that respondent was a sex offender requiring civil confinement, petitioner commenced this proceeding pursuant to Mental Hygiene Law article 10 to have respondent adjudicated a dangerous sex offender and committed to a secure treatment facility (*see* Mental Hygiene Law § 10.06 [a]).

While not disputing his status as a detained sex offender (*see* Mental Hygiene Law § 10.03 [g]), respondent moved to dismiss this petition on the ground that when the petition was filed, he was a sex offender who had been admitted pursuant to Mental

---

**2.** The record does not reflect what statutory authority—Correction Law § 402 or Mental Hygiene Law article 9—was used to accomplish these transfers.

**3.** "[A] [m]ental abnormality means a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03 [i] [internal quotation marks omitted]).

Hygiene Law article 9 to an OMH psychiatric hospital near the completion of his term of imprisonment and, as long as he retained that status, he could not be subject to Mental Hygiene Law article 10 civil confinement. Respondent also argues that petitioner has failed to demonstrate that his treatment needs would be met by placing him in a secure treatment facility pursuant to such a proceeding. Supreme Court held a probable cause hearing (*see* Mental Hygiene Law § 10.06 [g]) and, at the end of that proceeding, found that there was "no inherent incompatibility" between articles 9 and 10, and denied respondent's motion to dismiss the petition. It also found that there was probable cause to believe that respondent was a sex offender requiring civil management and ordered that he be placed in a secure treatment facility to await trial (*see* Mental Hygiene Law § 10.06 [k]).

A trial was subsequently conducted and a jury found that it had been established by clear and convincing evidence that respondent was a detained sex offender who suffered from a mental abnormality (*see* Mental Hygiene Law § 10.07). Supreme Court then conducted a dispositional hearing and concluded that respondent had a mental abnormality involving a strong predisposition to commit sex offenses, such that he was likely to be a danger to others if not confined to a secure facility (*see* Mental Hygiene Law § 10.07 [f]). Respondent now appeals from the order that incorporated that finding and directed his commitment to a secure treatment facility.

To qualify as a dangerous sex offender requiring civil confinement, an individual must be "a detained sex offender suffering from a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the person is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility" (Mental Hygiene Law § 10.03 [e]).[4] Respondent, as previously noted, does not dispute that he is a detained sex offender. However, he claims that since he is a convicted sex offender who was admitted directly from prison to an OMH psychiatric hospital for treatment pursuant to Mental Hygiene Law article 9, petitioner may not seek to alter that status by commencing a Mental Hygiene Law article 10 civil confinement proceeding. In

---

4. Alternatively, a detained sex offender can be found to suffer from a mental abnormality but require "strict and intensive supervision" as opposed to confinement in a secure treatment facility (Mental Hygiene Law § 10.03 [r]).

that regard, respondent relies on a provision in article 10 classifying him as a detained sex offender based on his article 9 patient status, which specifically provides that "the provisions of this article shall not be deemed to shorten or lengthen the time for which such person may be held pursuant to [article 9]" (Mental Hygiene Law § 10.03 [g] [5]).

■ Initially, we note that the statute establishing the criteria by which an individual may be subjected to Mental Hygiene Law article 10 civil confinement does not, by its terms, exclude sex offenders who have been admitted to OMH psychiatric hospitals pursuant to Mental Hygiene Law article 9.[5] In addition, the provision relied upon by respondent in his motion to dismiss was part of a statutory scheme specifically enacted by the Legislature to address due process issues caused by the method employed by the state in dealing with detained sex offenders who were about to be released from prison and posed a serious threat to the public (see State of N.Y. ex rel. Harkavy v Consilvio, 7 NY3d 607 [2006]). Nothing in this statute indicates any intent to exempt from civil confinement detained sex offenders simply because they had been admitted to an OMH psychiatric hospital pursuant to article 9 to receive treatment for their psychiatric disorders.

In addition, there are six categories by which an individual can be classified as a detained sex offender who then may be subject to civil confinement (see Mental Hygiene Law § 10.03 [g] [1]-[6]). These provisions are not mutually exclusive and respondent, based upon his criminal record and institutional history, qualifies as a detained sex offender under at least two of them. In one he qualifies because he was convicted of a sex offense and, at the time the petition was brought, was "a patient in a hospital operated by [OMH], and who was admitted directly to such facility pursuant to [Mental Hygiene Law] article [9]" (Mental Hygiene Law § 10.03 [g] [5]). In another, he qualifies as a detained sex offender because he was convicted of a designated sex offense and, at the time this petition was commenced, was "subject to supervision by the division of parole" (Mental Hygiene Law § 10.03 [g] [1]). Since the provision relied upon by

5. Mental Hygiene Law § 9.27 (a) authorizes the involuntary hospitalization of persons who are mentally ill, in need of voluntary care and treatment, and present a danger to themselves or society. Mental Hygiene Law article 10 contains a legislative scheme designed to address the issue of the civil confinement of certain sex offenders who are near the end of their terms of imprisonment.

respondent in his motion to dismiss only applies to detained sex offenders hospitalized pursuant to article 9, it cannot serve as a bar to an article 10 civil confinement proceeding based on respondent's status as a detained sex offender because he is a convicted rapist under parole supervision (Mental Hygiene Law § 10.03 [g] [1]).

In any event, we are unpersuaded by respondent's argument that the language of Mental Hygiene Law § 10.03 (g) (5) somehow limits petitioner's ability to commence this civil confinement proceeding.[6] Such an interpretation is, in our view, inconsistent with *State of N.Y. ex rel. Harkavy v Consilvio* (8 NY3d 645 [2007]; *see generally People ex rel. David NN. v Hogan*, 53 AD3d 841 [2008], *lv denied* 11 NY3d 708 [2008]; *see also Matter of Larry TT.*, 68 AD3d 1229, 1229-1230 [2009]), and would, if adopted, severely limit and, in many instances, completely eliminate any application of the civil confinement process to parolees who remain under the supervision of the Division of Parole but have been admitted for treatment to OMH psychiatric hospitals pursuant to Mental Hygiene Law article 9. To so limit the application of this statute would be at odds with the legislative objective of providing the public with a measure of protection from dangerous sex offenders and, at the same time, insure that these offenders receive treatment designed to reduce their risk of recidivism (*see generally People v Buss*, 11 NY3d 553, 558 [2008]).

■ Turning to respondent's arguments regarding his placement at a secure treatment facility, he does not challenge the sufficiency of the proof submitted by petitioner establishing that he was a dangerous sex offender requiring confinement, but argues that he should have been allowed to introduce expert testimony to the effect that his clinical needs would best be served by placement at an OMH psychiatric hospital as opposed to a Mental Hygiene Law article 10 secure treatment facility. However, once Supreme Court determined that respondent was a dangerous sex offender requiring confinement—and we find that it did not err in making that determination (*see Matter of*

---

**6.** Prior to the Mental Hygiene Law article 10 civil confinement statute being enacted, the state routinely used Mental Hygiene Law article 9 to involuntarily commit to psychiatric institutions sex offenders who posed a threat to the public and who were nearing the end of their prison sentence. Mental Hygiene Law § 10.03 (g) (5) was enacted to insure that these patients—the so-called *Harkavy* patients—were included in article 10 and received the procedural rights provided by that statute (*see State of N.Y. ex rel. Harkavy v Consilvio*, 8 NY3d 645, 651-652 [2007]).

*State of New York v Derrick B.*, 68 AD3d 1124, 1127 [2009])—it was required to commit respondent "to a secure treatment facility for care, treatment, and control until such time as he or she no longer requires confinement" (Mental Hygiene Law § 10.07 [f]; *see Matter of State of New York v Stanley D.*, 68 AD3d 1007, 1008 [2009]). Therefore, Supreme Court properly limited the testimony of respondent's expert regarding the appropriateness of respondent's placement and whether his treatment needs could be met at a secure treatment facility.

■ Finally, respondent argues that OMH's failure to advocate his continued treatment as a voluntary patient in the context of this proceeding constituted an abdication of its responsibility to him as its patient under Mental Hygiene Law § 9.21 (a). While OMH does have an obligation to treat its patients in a manner that encourages them to seek and pursue treatment on a voluntary basis, it may still offer an opinion based on a given set of facts that a patient receiving treatment pursuant to Mental Hygiene Law article 9 does qualify as a dangerous sex offender requiring confinement pursuant to Mental Hygiene Law article 10 (*see generally Matter of Harvey S.*, 38 AD3d 908, 909 [2007], *lv denied* 10 NY3d 702 [2008]).

To the extent not specifically addressed, respondent's remaining contentions have been reviewed and found to be without merit.

CARDONA, P.J., MERCURE, MALONE Jr. and McCARTHY, JJ., concur.

Ordered that the order is affirmed, without costs.