OPINION OF THE COURT
Daniel P. Conviser, J.
The defendant moves to be resentenced pursuant to the Drug Law Reform Act of 2009 (2009 DLRA) (L 2009, ch 56, part AAA, codified at CPL 440.46). That motion is opposed by the People. For the reasons stated below, the court finds that the defendant is not statutorily eligible for resentencing. The court holds that defendant’s instant class B felony sentence has already been completed and that his subsequent sentence for a class C felony drug offense not covered by the 2009 DLRA did not serve to extend the period of his instant class B felony sentence beyond its term. Defendant’s motion is therefore denied.
Statement of Facts
The defendant was arrested for the instant offense on October 16, 1994. He was convicted after a jury trial in that case of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree and on January 27, 1997 sentenced as a second felony offender to concurrent indeterminate prison sentences of 5x/2 to 11 years. He was convicted in that case of selling $20 of cocaine to an undercover police officer.
On May 19, 1999, the defendant was released on parole. Approximately six months later he was arrested for another drug sale charge. He pleaded guilty to attempted criminal sale of a controlled substance in the third degree, a class C felony, on August 4, 2000. He then apparently failed to appear in court for sentencing and a bench warrant for his appearance was issued on February 28, 2001. He was returned on that warrant a little more than two years later on May 2, 2003. He was sentenced upon that conviction on June 12, 2003 to an indeterminate sentence of imprisonment with a term of 3x/2 to 7 years. (See People’s affirmation in opposition to defendant’s motion, Jan. 26, 2010, exhibit C, at 16.)
The defendant subsequently moved pro se under the 2009 DLRA to be resentenced for this class C felony conviction. That motion was denied in Westchester County Supreme Court, inter alia, because the court held that the 2009 DLRA did not autho *587 rize the resentencing of class C felony drug offenders. (People v Nieves, Sup Ct, Westchester County, Dec. 8, 2009, Molea, J., indictment No. 00-826s.) In addition to these charges, the defendant was convicted of criminal possession of controlled substance in the fifth degree in 1990 and attempted criminal sale of a controlled substance in the third degree in 1991. Mr. Nieves also has six misdemeanor convictions and would appear to have two pending misdemeanor cases. His misdemeanor convictions include several for criminal possession of a controlled substance as well as possession of burglar’s tools and criminal possession of stolen property.
Mr. Nieves completed the Department of Correctional Services (DOCS) alcohol and substance abuse treatment program in 2005 and recently completed a three-month relapse prevention program. Defendant asserts he has not been subject to any disciplinary infractions during the nine years in which he has been incarcerated. Defendant’s counsel characterizes defendant’s entire criminal history as being symptomatic of a long struggle with drug addiction. His counsel asserts that during his time in prison the defendant has been a “model inmate” who has engaged in vocational training, earned the right to work outside the facility and taken advantage of every programmatic opportunity he has been provided. Mr. Nieves has become a “Group Leader” in a number of vocational work assignments. Defendant’s counsel, the Office of the Appellate Defender, indicates that it will assist Mr. Nieves through its social work unit if he were to be released.
As the People recount in their affirmation in opposition to defendant’s motion, however, Mr. Nieves continues to have extensive and repeated contacts with the criminal justice system through parole violations and the commission of new crimes. Thus, his behavior while not incarcerated has been significantly more problematic than his behavior in prison:
“Beginning in 1988, Petitioner has had regular contact with the criminal justice system, being arrested almost yearly when he has not been incarcerated. Before the instant case, Petitioner was convicted of three narcotics sales in a five month period; in fact, Petitioner was on parole when he committed the narcotics felony for which he is requesting resentencing. He was arrested in April, 1990 for the sale of narcotics, and while that case was pending disposition he was rearrested in June, 1990 for an *588 other sale of narcotics; while both those cases were pending, Petitioner was arrested again in September, 1990 for yet another sale of narcotics. After serving his sentence for the three aforementioned drug sales, Petitioner violated his parole less than a month after his release and spent almost 4 months in jail. Approximately 4 months after his release from that prison stay, Petitioner was arrested on the instant case. After serving his sentence on the instant case, Petitioner was arrested for his fifth narcotics-related sale approximately six months after his release and was only sentenced after he was returned on a bench warrant SVs years later. Since Petitioner’s last conviction for the sale of narcotics in 2000, he has had regular contact with the criminal justice system and has been incarcerated for parole violations five times. During his latest period of incarceration for parole violations, Petitioner filed this motion for resentencing. A day after his release from custody, on December 20, 2009, Petitioner was arrested for petit larceny and remains incarcerated pending the resolution of that case.” (People’s affirmation at 14-15.)
The People indicate that defendant’s maximum parole expiration date is now March 12, 2015. The People also note that defendant’s maximum sentence expiration date on his instant class B felony 1997 conviction was August 4, 2008. The defendant is still serving the 3Vs to 7 years’ indeterminate sentence he received for his 2000 conviction for the class C felony of attempted criminal sale of a controlled substance in the third degree. On January 26, 2010, he was given a time assessment of nine months for his most recent parole violation.
Conclusions of Law
The 2009 DLRA, inter alia, allows certain convicted class B felony drug offenders serving indeterminate sentences imposed prior to January 13, 2005 to be resentenced to new determinate terms under the new determinate sentencing ranges created by the statute.[1] The statute first requires a court to determine whether a defendant is eligible for resentencing. In this case, *589 the parties disagree about whether the defendant is statutorily eligible for resentencing in one respect. The People argue that the defendant is ineligible for resentencing because he is currently incarcerated only by virtue of a parole violation. In support of this argument, the People primarily rely on People v Mills (11 NY3d 527 [2008]) and People v Rodriguez (68 AD3d 676 [1st Dept 2009]). The defendant contends that the fact that the defendant was incarcerated at the time the instant motion was filed only by virtue of a parole violation does not make him ineligible for resentencing.
The eligibility issue raised by the People here is one which numerous trial courts are currently grappling with. This court analyzed the issue in Figueroa. In that decision, this court concluded that “a defendant who is returned to prison after violating the provisions of his parole is not, by virtue of that fact, barred from resentencing eligibility under the 2009 DLRA.” (Figueroa, 27 Misc 3d at 754.) Thus, the defendant, in the court’s view, is not ineligible for resentencing because he was incarcerated on the date this motion was filed only by virtue of having been returned to prison on a parole violation.
The court does hold, however, that the defendant is statutorily ineligible for resentencing for a related reason. The defendant’s sentence for his instant crime, which was committed in 1994, expired in 2008, prior to the enactment of the 2009 DLRA. The only argument that the defendant continues to be eligible for resentencing arises because the sentence he received for his narcotics felony conviction in 2000, when added to the sentence for the instant crime, has extended his aggregate sentence until 2015. The question here is whether the enlargement of defendant’s initial sentence which arose from his new sentence means that the defendant continues to be eligible for resentencing even though he would no longer be subject to any sentence had he not committed a new crime and received a new sentence in 2003. In the court’s view, the defendant’s 2000 conviction cannot serve to extend the period of his sentence for his 1997 conviction and thereby make him eligible for resentencing.
The analysis begins with the language of the statute. Under the 2009 DLRA:
“Any person in the custody of the department of *590 correctional services convicted of a class B felony offense defined in article two hundred twenty of the penal law which was committed prior to January thirteenth, two thousand five, who is serving an indeterminate sentence with a maximum term of more than three years, may, except as provided in subdivision five of this section, upon notice to the appropriate district attorney, apply to be resentenced to a determinate sentence in accordance with sections 60.04 and 70.70 of the penal law in the court which imposed the sentence.” (CPL 440.46 [1].)
Also highly relevant to the analysis, in the court’s view, is the language of the succeeding subdivision of the statute, which authorizes the resentencing in the same proceeding of a class C, D or E felony narcotics offense “the sentence or sentences for which were imposed by the sentencing court at the same time or were included in the same order of commitment as such class B felony.” (CPL 440.46 [2].)
In the court’s view, while the language of the statute is not completely clear, its plain meaning would appear to cover only a resentence for an instant class B felony or a class C, D or E drug felony imposed at the same time rather than a sentence which was subsequently imposed for an ineligible conviction. That is, the “indeterminate sentence” CPL 440.46 (1) speaks to is the sentence for the instant class B felony, rather than the sentence for any other crime which predates or post-dates the instant offense. (See Peter Preiser, 2009 Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 440.46, 2010 Pocket Part, at 25 [describing the statute as covering “an indeterminate sentence with a maximum term in excess of three years that was imposed for a class B felony defined in article 220” (emphasis added)].)
That construction is made more clear, in the court’s view, by the second subdivision of the statute. That subdivision allows a court, in addition to resentencing a defendant for an instant class B felony drug offense, to also resentence a defendant for a class C, D or E felony drug offense. The statute requires, however, that any such class C, D or E sentence have been imposed at the same time as an eligible class B felony. There would have been no reason for the Legislature to have specified that a defendant who was currently serving a sentence for a class C, D or E felony drug offense could only have that sentence modified if that additional sentence was imposed at the same time as an instant class B felony offense if such a sentence *591 could also be reformed if it was imposed at another time. In construing a statute, a court should assume that every provision of the statute has a meaning and was inserted into the statute for a purpose. (See Matter of Bliss v Bliss, 66 NY2d 382 [1985]; Direen Operating Corp. v State Tax Commn., 46 AD2d 191 [3d Dept 1974]; McKinney’s Cons Laws of NY, Book 1, Statutes § 231.) Construing the statute as the defendant here urges, in the court’s view, would treat the statute’s requirement that a sentence for a class C felony drug offense must be imposed at the same time as an instant class B felony drug offense as surplusage, with no meaning or purpose.
One final clue to the Legislature’s intent occurs in subdivision 5 (a) of the statute, where the Legislature defined certain prior convictions which serve to make an offender ineligible for resentencing. One provision of the statute provides that time an offender previously served in prison between the commission of an exclusion crime and “the time of commission of the present felony” (i.e., the felony for which a defendant seeks resentencing) must be excluded from the 10-year period within which a defendant cannot have been convicted of an exclusion offense in order to be eligible for resentencing (CPL 440.46 [5] [a]). In that subdivision, the Legislature was obviously assuming that “the time of commission of the present felony” was one discrete temporal event. That subdivision obviously does not contemplate that a present felony could be committed, for example, at one time and then be committed again, as the class C felony was in this case, five years later. It is axiomatic, of course, that in construing a statute, courts should look to the intent of the Legislature in enacting the law. (Carney v Philippone, 1 NY3d 333 [2004], rearg denied 2 NY3d 794 [2004].) In the court’s view, that intent seems clearly to preclude defendant’s eligibility for resentencing here.
In opposition to this construction, the defendant argues that his two sentences have become one aggregate sentence and that the defendant thus continues to be eligible for resentencing pursuant to this unitary aggregate sentencing term. In support of this proposition, defendant relies upon the holding of the Court of Appeals in People v Buss (11 NY3d 553 [2008]). Buss construed the consecutive sentencing calculation provisions of Penal Law § 70.30 (1) (b) as that statute applied to the Sex Offender Registration Act (SORA). This court recently analyzed the Buss rule in the context of its application to sex offender civil management proceedings under article 10 of the Mental *592 Hygiene Law in a decision which was affirmed by the Appellate Division, First Department. (Matter of State of New York v Rashid, 25 Misc 3d 318 [Sup Ct, NY County 2009], affd 68 AD3d 615 [1st Dept 2009].)
In Buss, the Court of Appeals held that where an offender is convicted of a sex crime and later convicted of a nonsexual offense for which the offender receives a consecutive sentence, the two sentences, for SORA purposes, are deemed to have been “made into one.” (11 NY3d at 557.) The defendant in Buss was convicted of a sex crime in 1983 for which he received a 2 to 6 years’ indeterminate term. He was then convicted of attempted murder while on parole in 1987 and sentenced to a consecutive indeterminate term of 10 to 20 years. When he was released in 2002, the Court held, Buss was still serving a sentence for his 1983 sex crime and thus still subject to the provisions of SORA, even though the maximum term of his sex offense conviction had expired 13 years earlier in 1989.
In reaching its conclusion, the Court largely relied upon the provisions of Penal Law § 70.30 (1) (b). That statute provides that when a defendant is serving two or more indeterminate terms which run consecutively, the minimum periods and maximum terms of those sentences are each respectively added together to form an aggregate minimum period of imprisonment and an aggregate maximum term of imprisonment. While acknowledging that the primary purpose of these calculations was to determine an offender’s parole eligibility date, the Court found it “reasonable to apply section 70.30 to the question of whether a prisoner who has been given multiple sentences is subject to all his sentences for the duration of his term of imprisonment.” (11 NY3d at 557.) The Court also grounded its holding on policy considerations. The Court noted that the primary purpose of SORA was to protect the public from the recidivism danger posed by sex offenders and held that it was “consistent with SORA’s aims that Buss was required to identify himself as a sex offender when ultimately released from prison, even though his sex offense sentence would have expired before SORA became effective had he not committed his later crime.” (Id. at 558.)
In Rashid, this court held that the Buss rule could not be applied to bring a convicted sex offender under the provisions of *593 article 10 of the Mental Hygiene Law.[2] In Rashid, the defendant had been convicted of a sex crime which qualified him for coverage under the civil management statute. He was then subsequently convicted of a nonsexual offense. When the State began sex offender civil management proceedings, the defendant was on parole for this subsequent nonsexual offense. The State urged that, under the Buss rule, the sentence for defendant’s initial sex crime (which qualified him for civil management) and the sentence for the subsequent nonsexual offense (which would not qualify him for civil management) had merged to form one sentence pursuant to Penal Law § 70.30 (1) (b).
That argument was rejected by this court and the Appellate Division, First Department. Both courts held that article 10 of the Mental Hygiene Law contained a specific definition of which sentences, other than sentences for sex offenses, “counted” in determining sex offender civil management eligibility. Both courts reasoned that it was this statutory definition, rather than the provisions of Penal Law § 70.30 (1) (b), which controlled whether the defendant’s nonsexual offense sentence could bring him within the eligibility window of article 10. Since the language of article 10 clearly indicated that the defendant was not a “detained sex offender” under the statute, the petition against him had to be dismissed. Both courts also based their holding on the differing consequences and policy considerations which would arise from construing the defendant’s sentences in Buss (under SORA) and in Rashid (under art 10) to have been merged. (See Rashid, 25 Misc 3d at 330-338; Rashid, 68 AD3d at 615.)
In the court’s view, the same logic applies here. As noted, supra, the Legislature, in the court’s view, made a determination under the 2009 DLRA to authorize the resentencing of certain class B felony offenders. It also authorized resentencing for certain class C, D and E felony offenders who had sentences *594 imposed at the same time. The Legislature did not intend to authorize resentencing for class C felony drug offenses committed many years after a qualifying class B felony drug offense was committed. Such a prohibited resentencing, in the court’s view, is what the defendant seeks here.
The Buss rule may well be applied in the future to resolve issues other than SORA eligibility. The reason why the Court of Appeals holding in Buss was reasonable, however, was because the SORA statute provided no clear answer to the question of whether a nonsex offense sentence imposed consecutive to a sex offense sentence could be used to determine SORA eligibility. In the absence of any clear provision in the SORA statute, it was reasonable for the Court of Appeals to look to the general provisions of the Penal Law to reach a result. In the view of this court, however, Penal Law § 70.30 (1) (b) may not be applied to extend the reach of a sentencing statute where the Legislature has clearly indicated an intention to follow a different rule.
As the Court in Buss noted, Penal Law § 70.30 (1) (b) was enacted by the Legislature to calculate parole eligibility dates. Penal Law § 70.30 addresses how consecutive and concurrent sentences are added together and how the aggregate length of such multiple sentences are calculated. The statute provides essential uniform rules about how multiple disparate sentences which may have been imposed at different times and under different circumstances are aggregated. The statute was not enacted to calculate resentencing eligibility under the 2009 DLRA. Indeed, Penal Law § 70.30 was last significantly amended by the Legislature in 1995.[3] Nor does Penal Law § 70.30 (1) (b), in the court’s view, necessarily have any controlling significance in construing every statute which may ever be enacted which requires an interpretation of whether a given sentence is covered under a given law.
Even assuming that Penal Law § 70.30 (1) (b) might be construed as applying to the 2009 DLRA, where a general and a specific provision of a statute address the same matter, like the general parole eligibility calculation rules of Penal Law § 70.30 and the specific mandates of the 2009 DLRA, it is the specific enactment of the Legislature, rather than any general rule which is controlling. (Statutes § 238; see also People v Lawrence, 64 NY2d 200 [1984]; People v Mobil Oil Corp., 48 NY2d 192 [1979].) Finally, while the logic of Buss, as the defendant argues, *595 could certainly be applied to the 2009 DLRA, the Buss holding itself was carefully limited to SORA. As the Buss court clearly stated: “We hold that for SORA purposes a prisoner serving multiple sentences is subject to all the sentences, whether concurrent or consecutive, that make up the merged or aggregate sentence he is serving.” (11 NY3d at 557-558 [emphasis added].) Thus, construing the statute as precluding defendant’s resentencing eligibility would not in any respect be contrary to the holding of the Court in Buss.
Not applying the Buss rule to authorize defendant’s resentencing, in the court’s view, would also be consistent with one of the fundamental rationales the Court of Appeals relied upon in denying resentencing under the 2005 Drug Law Reform Act (2005 DLRA) to defendant Jose Then in People v Mills (11 NY3d 527 [2008]).[4] In Mills, the Court of Appeals held that defendants released on parole who were subsequently returned to prison for parole violations were not eligible for resentencing under the 2005 DLRA.[5] In Mills, one of the two named defendants, Jose Then, had been returned to prison after being released on parole and committing a new crime. Mills, in the view of this court, based its holding on two underlying rationales. First, the Court held that allowing resentencing under the 2005 DLRA after a parole violation would lead to “illogical if not perverse results.” (11 NY3d at 537.) The Court noted that Jose Then would not have been eligible for resentencing under the statute if he had not committed a second crime and been returned to prison. The Court reasoned that “[s]urely the Legislature did not intend fresh crimes to trigger resentencing opportunities.” (11 NY3d at 537.)
In Figueroa, this court noted that this underlying rationale for the Mills decision was not based on the language of the 2009 DLRA or on any legislative history relevant to the act. Rather, this court noted that the holding was an application of the well-established rule that a statutory interpretation which is contrary to reason or would lead to an unreasonable result is presumed to be against the intent of Legislature, regardless of any statutory language or legislative history indicating that the Legislature actually intended such a construction. (Figueroa, 27 Misc 3d at 756, citing Statutes § 143.)
*596 In Mills, however, the Court also articulated a second rationale for its holding. In considering whether Jose Then’s second crime could serve to bring him into the statute’s eligibility window, the Court held that it would be most sensible to consider whether the defendant was eligible for resentencing only with respect to the crime he was applying to be resentenced for, rather than by also considering the defendant’s second crime. (“A valid and more sensible reading of the statutory text is that in order to be eligible for resentencing, an inmate must be more than three years from parole eligibility [the relevant eligibility standard under the statute] for the same class A-II felony for which resentencing is sought” [11 NY3d at 537].) This rationale for the Court of Appeals decision, in this court’s view, was not based on a determination that a different rule would be irrational and could thus not be imputed to the Legislature. This rationale was based on the Court’s view that the language of the statute could be most fairly and sensibly read to apply only to the crime the offender was applying to be resentenced for. This second rationale, unlike the first, was based on a plain reading of the statute.
In Figueroa, this court reasoned that the holding in Mills— that a defendant who violated parole could never be eligible for resentencing under the 2005 DLRA — was not applicable to the 2009 DLRA. This court held that differences between the two statutes and the inapplicability of the underlying policy rationales in Mills to the 2009 DLRA required that result. This court has a different view, however, about the applicability of the Mills court’s view that the 2005 DLRA could most sensibly be read as applying only to a defendant’s instant crime. In the court’s view, that same logic does apply to the 2009 DLRA. A plain reading of the 2009 DLRA, like the plain reading the Court of Appeals gave to the 2005 DLRA, compels the conclusion that resentencing eligibility under each statute must be determined with respect only to the eligible crimes a defendant applies to be resentenced for. When the Legislature created a resentencing statute applicable to certain class B felony offenders and certain class C, D and E felony offenders sentenced at the same time, it intended to limit the statute to those offenses. The defendant here is arguably eligible for resentencing only because of a class C felony conviction which occurred five years after his convic *597 tion for the instant offense.[6] Therefore he is not eligible for resentencing. (See People v Rivera, Sup Ct, Bronx County, Feb. 1, 2010, Benitez, J., Nos. 2608, 1977/2000 [holding that Mills should not be held to bar the resentencing of parole violators under the 2009 DLRA but noting that the rationale in Mills that resentencing should be considered only with respect to the crime a defendant applies to be resentenced for, rather than other crimes, does apply to the 2009 statute].)6 [7]
Allowing resentencing in this case would not reform the defendant’s class B felony sentence. That sentence is over. What defendant is seeking here is a recalculation of the date on which his ineligible class C felony sentence would be deemed to have commenced so that the maximum expiration date of that sentence would be diminished from 2015 to some earlier time. Were this court to change defendant’s instant 572 to 11 years’ indeterminate sentence, for example, to a six years’ determinate term, such a reformation would have no impact on the defendant’s class B felony sentence, which has already been served. It could also not have any effect on his class C felony sentence unless the court construed this reformation to push back the commencement of defendant’s second class C felony offense to a date prior to the time that sentence actually started. In the court’s view, however, there is no evidence that the Legislature *598 intended to authorize such a retroactive recalculation of the commencement date of a sentence not covered by the statute which was imposed for a crime committed years after an eligible sentence had been imposed. Indeed, as noted, supra, defendant’s previous application to reform his class C felony sentence was denied three months ago in the Westchester County Supreme Court.[8]
For all of the foregoing reasons, defendant’s motion for resentencing under the 2009 DLRA is denied.[9]

. This court has issued three recent, previously reported opinions in which it analyzed the resentencing provisions of the 2009 DLRA. (See People v Jones, 25 Misc 3d 1238[A], 2009 NY Slip Op 52483[U] [Sup Ct, NY County, Dec. 10, 2009]; People v Brown, 26 Misc 3d 1204[A], 2010 NY Slip Op 50000[U] [Sup Ct, NY County, Jan. 4, 2010]; People v Figueroa, 27 Misc 3d 751 *589 [Sup Ct, NY County, Feb. 8, 2010].) Some analysis and language from those previous decisions is incorporated in the instant decision and order.

. As this court outlined in Rashid, article 10 of the Mental Hygiene Law, enacted by the Legislature in 2007, authorizes certain convicted sex offenders to be subject to indefinite civil confinement in a secure mental health facility or indefinite, strict and intensive supervision and treatment in the community upon a finding by a jury that such an offender suffers from a “mental abnormality” as defined by the statute. The law requires that in order to be subject to such a determination, an offender must be a “detained sex offender” as defined by article 10. The question in Rashid was whether the Buss rule could be used to find that the respondent was a detained sex offender and thereby eligible for possible confinement or supervision and treatment under the statute.

. See L 1995, ch 3, §§ 13-16 (Sentencing Reform Act of 1995).

. The 2005 DLRA was enacted by chapter 643 of the Laws of 2005 and authorized the resentencing of class A-II felony offenders.

. This court analyzed the parameters of the Mills rule in its decision in Figueroa (27 Misc 3d at 754-759 [2010]).

. Indeed, the DOCS Inmate Information Data Sheet for the defendant, while certainly not dispositive, indicates that he is currently incarcerated for his 2000 conviction, not the instant offense. (See exhibit A to People’s affirmation.)

. It might be argued that a decision last year by the Appellate Division, Second Department, construing the application of the Buss rule to the 2005 DLRA (People v Delk, 59 AD3d 733 [2d Dept 2009]), supports the contrary conclusion. In Delk, the defendant was sentenced concurrently for a class A-II felony drug offense and a violent felony weapon offense. When he applied for resentencing, his weapon sentence had already run. The 2005 DLRA barred offenders not eligible for “merit time” from the statute and defendant’s weapon felony subjected him to that bar. The Court held that the defendant was still effectively serving his concurrently imposed weapon sentence when he applied for resentencing and was thus not eligible to be resentenced even though the five-year term of that weapon offense had finished. Delk involved the 2005 DLRA rather than the 2009 act and construed the Penal Law’s concurrent rather than consecutive sentencing calculation provisions. More significantly, however, the Delk court held that its ruling was compelled not only by the logic of Buss but by the “plain and unambiguous language” of both the 2005 DLRA and the Correction Law’s “merit time” provisions. (59 AD3d at 734.) Here, this court has reached the opposite conclusion with respect to the plain language and intent behind the 2009 DLRA. The plain meaning of the 2009 DLRA, in the court’s view, compels the denial of defendant’s motion here.

. Ironically, in his initial pro se motion made in the Westchester County Supreme Court, the defendant himself aptly illustrated this point. Defendant initially attempted to reduce his sentence by attacking the problem head on: seeking to reform the sentence he is currently serving for a class C felony. Only when this effort failed (as it had to) did he then, with the assistance of able counsel, attack the same problem from an indirect angle: attempting to effectively reform the same class C felony sentence by reducing the term of the previous class B felony sentence he had finished serving.

. Where a court determines that a defendant is eligible to be resentenced under the 2009 DLRA, the court must offer a defendant a new determinate sentence and period of postrelease supervision unless the court finds that “substantial justice dictates” the denial of defendant’s motion. (CPL 440.46 [3], referencing L 2004, ch 738, § 23.) Given that the court has determined that the defendant is not eligible for resentencing, it has not made this second discretionary determination.