[923 NYS2d 619]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SEAN OVERTON, Appellant.

Second Department, May 17, 2011

**APPEARANCES OF COUNSEL**

*Lynn W.L. Fahey*, New York City (*William Kastin* of counsel), for appellant.

*Richard A. Brown, District Attorney*, Kew Gardens (*John M. Castellano, Johnnette Traill* and *Anastasia Spanakos* of counsel), for respondent.

**OPINION OF THE COURT**

RIVERA, J.P.

In this case, we consider whether the defendant's release from incarceration to parole supervision affects his eligibility for resentencing under the 2009 Drug Law Reform Act (L 2009, ch 56, part AAA, § 9 [hereinafter the 2009 DLRA]), as codified in CPL 440.46, and renders the instant appeal academic. For the reasons that follow, upon applying the criteria for eligibility under the 2009 DLRA, we determine that the instant appeal is not academic. On the merits, we conclude that a reduction of the resentence proposed by the Supreme Court is not warranted.

## I. Factual and Procedural Background

On five separate occasions in March and April 2004, the defendant sold cocaine to undercover police officers. For these acts, the defendant was charged, under Queens County indictment No. 10733/04, with five counts of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), a class B felony.

On April 18, 2005, the defendant pleaded guilty to all five counts charged in the indictment. On May 11, 2005, the defendant was sentenced to concurrent determinate terms of imprisonment of 3½ years, to be followed by a three-year period of postrelease supervision. In this regard, the Supreme Court found that the defendant should benefit from the provisions of the Drug Law Reform Act of 2004 (L 2004, ch 738 [hereinafter the 2004 DLRA]). The People appealed from the sentence, contending that the sentence imposed was illegal. By decision and order dated May 16, 2006, this Court reversed the sentence (*see People v Overton*, 29 AD3d 826, 827 [2006]). This Court determined that the 2004 DLRA became effective on January 13, 2005. We stated that

> "[s]ince the defendant's crimes were committed prior to the effective date of the . . . sentencing provisions, the sentence imposed upon the defendant pursuant to the [2004] DRLA was invalid as a matter of law, and the defendant must be resentenced under the law in effect at the time he committed the crimes" (*id.* at 827).

Accordingly, this Court remitted the matter to the Supreme Court, Queens County, for resentencing.

On June 12, 2006, the Supreme Court resentenced the defendant to concurrent indeterminate terms of 4½ to 9 years' imprisonment. On June 23, 2006, the sentence was apparently amended so as to impose certain mandatory monetary fines.

### A. The Defendant's Motion for Resentencing Under the 2009 DLRA

By notice of motion dated October 13, 2009, the defendant moved to be resentenced pursuant to the 2009 DLRA. In support of his motion, the defendant's counsel contended that, based upon the defendant's great strides toward rehabilitating himself and his eligibility for resentencing under the 2009 DLRA, he should be resentenced "toward the low end of the available sentencing range." Counsel indicated that the applicable determinate sentencing range was between 2 and 12 years, with a mandatory postrelease supervision period ranging between 1½ and 3 years. He noted that the defendant's criminal history, which consisted "almost exclusively" of "lower level drug crimes" and his "quite positive" institutional record rendered the defendant "the kind of inmate the Legislature envisioned when it enacted" the 2009 DLRA.

### B. The People's Opposition to the Defendant's Motion

In opposition, the People asserted that the defendant's motion to be resentenced pursuant to the 2009 DLRA should be denied.

Relying upon the defendant's prior criminal and parole history, the defendant's prison infractions, and the fact that the defendant had been denied parole in 2008, the People asserted that the defendant had been unable to rehabilitate himself after receiving vocational and educational training during his past incarcerations. Thus, they claimed that "substantial justice" dictated that the defendant should serve his original sentence.

The People maintained that the defendant was not one of the individuals the Legislature would find to have been unfairly treated by "the old drug laws." According to the People, resentencing was inappropriate because selling drugs was "the defendant's only source of income for his entire adult life." The People referred to the defendant as "a career drug dealer [who] profits and preys on drug-addicted people." Moreover, the People insisted that the defendant had not rehabilitated himself since

his initial incarceration in 1991. The People claimed that the defendant was "in need of close supervision" since he was a "persistent recidivist." The People concluded:

> "[W]hen it enacted the revisions to the Rockefeller Laws, the legislature could not have intended to reduce the sentence of an inmate like [the] defendant, who is a career drug dealer with a history of probation and parole violations and who does not sell drugs to support a drug habit. In addition, [the] defendant is a poor candidate for re-sentencing since he has been given three prior opportunities to become a productive member of society and remain at liberty but he continued to repeat his prior illegal behavior and sell drugs to addicts, demonstrating that not only has he not benefitted from efforts to rehabilitate him while incarcerated, but that he is incapable of living a law-abiding life."

Alternatively, the People claimed that the court should resentence the defendant to a term of nine years' imprisonment, to be followed by three years' postrelease supervision.

## C. The Defendant's Reply

In a reply affirmation dated November 18, 2009, defense counsel argued that the People's claims were contrary to the Legislature's intent in enacting the 2009 DLRA and that the People had ignored the "extremely positive" changes that the defendant had made in his life. Counsel reiterated that the defendant's disciplinary prison record, when considered over the course of 4½ years' incarceration, amounted to an average of "about a single ticket per year, far from a dismal overall record."

## D. The 2009 DLRA Hearing

On December 1, 2009, the defendant appeared with counsel before the Supreme Court for the 2009 DLRA hearing. At the commencement thereof, the Supreme Court indicated that, pursuant to the 2009 DLRA, the applicable sentencing range for a second felony offender, such as the defendant, was a determinate sentence of between 2 and 12 years' imprisonment and "anywhere between one and a half to three years" of postrelease supervision. The Supreme Court stated that it had "come up with the offer to the defendant" whereby it proposed to resentence him to concurrent determinate terms of imprison-

ment of seven years, to be followed by a three-year period of postrelease supervision.

Defense counsel asked the Supreme Court to "reconsider the sentence in light of a number of factors." He asserted that the defendant was initially sentenced to "the minimum applicable at the time," which was $3^1/_2$ years' incarceration. The defendant was then resentenced to $4^1/_2$ to 9 years' incarceration. Counsel claimed that the proposed sentence of seven years' imprisonment followed by three years of postrelease supervision "exceeds the nine years of the current sentence in supervision." Counsel further argued that the proposed sentence was "too extreme."

In contrast, the People requested that the Supreme Court impose nine years' incarceration to be followed by three years' postrelease supervision. The People focused on the defendant's disciplinary history, including the fact that he had five disciplinary infractions. The People added that, although the defendant had been involved in programs and job training while incarcerated, "he also did that in his prior incarcerations, but he always ended up reoffending when he was out." The People argued that the fact that the defendant was in an alcohol and substance abuse program was not "terribly significant" because the defendant had "professed a number of times that he doesn't have a drug problem."

The People asserted that "this is [not] a type of defendant [whom] the legislature envisioned releasing." The People described the defendant as someone who "doesn't abide by the rules in the prison facility that he is in and . . . keeps on repeat offending and . . . keeps on drug dealing." The People added that, while the defendant did not qualify as a "King Pin" in that he sold "small quantities and small amounts" of drugs, he repeatedly committed crimes and was "exactly the type of defendant that the legislature wants to protect drug abusers from." The People insisted that "if any defendant needs supervision when he gets out, it would be this defendant."

In response, defense counsel maintained that there was a "fundamental misunderstanding" in the People's assertion that the defendant had denied a drug addiction. He noted that such argument "ignores reality that many addicts deny [having a drug addiction]. That's the nature of addiction." Further, counsel asserted that the infractions committed by the defendant were "not specifically violent or horrible." He added that the Supreme Court's proposed resentence did not benefit the defendant because his conditional release date was "currently

May, 2010," but that the defendant was "willing to accept an offer for, for example, of six plus three post release supervision or seven plus one and a half."

The Supreme Court confirmed that it had given this matter "a lot of thought," and that it did not "wish to change" its proposed resentence. It stated, "I am standing by my recommendation."

After conferring with counsel, the defendant addressed the Supreme Court. He indicated that he stood "to walk out of prison this May if I don't take" the resentencing, adding "[y]our offer actually will keep me in prison a little longer." The Supreme Court indicated, "I am not certain of anything when it comes to release dates."

Defense counsel indicated that the defendant would not accept the court's proposed resentence and would appeal "the proposed offer." The defendant reiterated, "You can't expect me to take more time than I already have." Defense counsel confirmed that the Supreme Court's proposed offer to resentence the defendant to concurrent determinate terms of imprisonment of seven years, to be followed by a three-year period of postrelease supervision, was "being appealed."

### E. The Order Appealed From

In an order dated December 1, 2009, the Supreme Court concluded that the defendant was eligible for resentencing pursuant to the 2009 DLRA and proposed to resentence the defendant to concurrent determinate terms of imprisonment of seven years, to be followed by a three-year period of postrelease supervision.

The defendant appeals. On March 26, 2010, the defendant was released from prison. He is currently on parole supervision.

### II. The Parties' Contentions on Appeal

On appeal, the defendant contends that his outstanding efforts at rehabilitation entitle him to a further reduction of his sentence "for the purpose of releasing him from any further constraints under his sentence, including post-release supervision."

In response, the People argue that the instant appeal is academic, claiming that the defendant is no longer eligible for resentencing under the 2009 DLRA. Relying upon certain cases decided by the Appellate Division, First Department, which will be discussed infra, the People claim that the defendant's release

from prison makes him ineligible for resentencing under CPL 440.46. The People allege that, in enacting section 440.46, the Legislature wanted to "ameliorate the plight of those B drug felony offenders who were, at that time, languishing in prison" and once the defendant has been released and paroled, he has been relieved of his sentence of incarceration. In any event, on the merits, they maintain that the proposed sentence was neither harsh nor excessive.

In reply, the defendant asserts that his release from prison does not render his appeal "moot" because "he remains eligible for resentencing as to the supervisory portion of his sentence."

### III. Statutory Framework

"Among its many provisions, the Drug Law Reform Act (DLRA) [of 2004] (L 2004, ch 738) replaced the indeterminate sentencing scheme of the Rockefeller Drug Laws with a determinate system, and reduced mandatory minimum prison sentences for nonviolent felony drug offenders" (*People v Utsey*, 7 NY3d 398, 401 [2006]). Essentially, the 2004 DLRA established a new sentencing structure for laws that had been enacted in 1973 and were commonly referred to as the Rockefeller Drug Laws (*see People v Winfield*, 59 AD3d 747 [2009]; *People v Savage*, 29 AD3d 1022, 1024 [2006]). The 2004 DLRA was approved by the Governor on December 14, 2004, and became effective on January 13, 2005 (*see* L 2004, ch 738, § 41 [d-1]; *People v Overton*, 29 AD3d at 827).

In 2005, the Legislature passed a second act authorizing certain qualified persons in the custody of the Department of Correctional Services (hereinafter DOCS) who had been convicted of class A-II felony offenses committed prior to the effective date of the 2004 DLRA to apply to be resentenced pursuant to the new statutory scheme (*see* L 2005, ch 643, § 1).

In 2009, the Legislature passed the 2009 DLRA, the third amendment to the Rockefeller Drug Laws, which is codified in CPL 440.46. CPL 440.46 (1) provides that any person in the custody of DOCS who was convicted of a class B controlled substance felony offense which was committed prior to January 13, 2005, and is serving an indeterminate sentence with a maximum term of more than three years' imprisonment may, with certain exceptions not at issue here, apply to be resentenced to a determinate sentence in accordance with Penal Law §§ 60.04 and 70.70.

CPL 440.46 (3) provides, in part, that the provisions of section 23 of chapter 738 of the Laws of 2004 shall govern the

proceedings on and determination of a motion brought pursuant to CPL 440.46, provided, however that "the court's consideration of the institutional record of confinement of such person shall include but not be limited to such person's participation in or willingness to participate in treatment or other programming while incarcerated and such person's disciplinary history."

In turn, the relevant provisions of section 23 of chapter 738 of the Laws of 2004 provide that upon a resentencing application by a person in the custody of DOCS, the Supreme Court may:

> "consider any facts or circumstances relevant to the imposition of a new sentence which are submitted by such person or the people and may, in addition, consider the institutional record of confinement of such person . . . . Upon its review of the submissions and the findings of fact made in connection with the application, the court shall, unless substantial justice dictates that the application should be denied, in which event the court shall issue an order denying the application, specify and inform such person of the term of a determinate sentence of imprisonment it would impose upon such conviction."

In addition to the institutional record of confinement, courts have considered the following when determining whether substantial justice dictates that a resentencing application be denied: the defendant's prior criminal history (*see People v Winfield*, 59 AD3d 747 [2009]; *People v Perez*, 57 AD3d 921, 922 [2008]; *People v Flores*, 50 AD3d 1156 [2008]; *People v Stamps*, 50 AD3d 827, 827-828 [2008]; *People v Vega*, 40 AD3d 1020 [2007]; *People v Sanders*, 36 AD3d 944, 946-947 [2007]), the quantity of drugs underlying the current offense (*see People v Herrera*, 54 AD3d 873 [2008]; *People v Curry*, 52 AD3d 732 [2008]; *People v Stamps*, 50 AD3d at 827), whether the current offense was committed while the defendant was on parole or probation (*see People v Curry*, 52 AD3d at 732), whether the defendant has shown remorse (*see People v Beasley*, 47 AD3d 639, 641 [2008]; *People v Sanders*, 36 AD3d at 947), and whether the defendant has a history of parole violations (*see People v Hidalgo*, 47 AD3d 455 [2008]; *People v Aguirre*, 47 AD3d 489 [2008]; *People v Gonzalez*, 29 AD3d 400 [2006]).

## IV. The Defendant's Eligibility to Be Resentenced Under CPL 440.46

■ In order to *apply* for resentencing under CPL 440.46 (1), a person must: (1) be in the custody of DOCS; (2) have been convicted of a class B felony offense defined in article 220 of the Penal Law; (3) have committed the offense prior to January 13, 2005; (4) be serving an indeterminate sentence with the maximum term of more than three years; and (5) not be serving a sentence on a conviction for or have a predicate felony conviction for an exclusion offense. Here, the defendant stands convicted of five counts of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), which he committed in 2004, and is serving an indeterminate sentence of concurrent terms of imprisonment consisting of 4½ to 9 years. He is not among the category of inmates excluded from qualifying for resentencing under subdivision (5) (a) of CPL 440.46. Significantly, at the time of the defendant's application, he was in the custody of DOCS. Accordingly, under the clear meaning of CPL 440.46, the defendant meets all of the criteria to be eligible for resentencing.

The People rely on several decisions of the Appellate Division, First Department, wherein that Court held that a *reincarcerated* parole violator is not eligible to be resentenced under the 2009 DLRA (*see People v Pratts*, 74 AD3d 536 [2010], *lv granted* 15 NY3d 895 [2010]). In *Pratts*, the Appellate Division, First Department, stated:

> "We conclude that the 2009 DLRA, like its predecessors, 'was not intended to apply to those offenders who have served their term of imprisonment, have been released from prison to parole supervision, and whose parole is then violated, with a resulting period of incarceration' (*People v Bagby*, 11 Misc 3d 882, 887 [2006]). The purpose of the DRLA resentencing provisions is to relieve prison inmates of onerous sentences of incarceration. This defendant was relieved of his sentence of incarceration when he was paroled, and he could have remained at liberty by adhering to his parole conditions. Moreover, had he done so for two years, he could have also been relieved of his entire sentence, including parole, pursuant to Executive Law § 259-j (3-a). 'If defendant had not violated his parole conditions, he would not have been in the custody of the

Department of Correctional Services when he moved to be resentenced, and he would therefore have been ineligible for resentencing' (*People v Rodriguez*, 68 AD3d 676 [2009]). There is no reason to believe that the Legislature intended parole violations to trigger resentencing opportunities (*see People v Mills*, 11 NY3d 527, 537 [2008]; *Bagby*, 11 Misc 3d at 887). A statutory interpretation that is 'contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent' (McKinney's Cons Laws of NY, Book 1, Statutes § 143, Comment, at 288)" (74 AD3d at 536-537).

In several other cases, the Appellate Division, First Department, has similarly found that a defendant convicted of a class B felony drug offense who is released on parole, but is then reincarcerated for a parole violation, is not eligible to be resentenced under the 2009 DLRA (*see e.g. People v Cuello*, 77 AD3d 500 [2010]; *People v Paulin*, 74 AD3d 685 [2010], *lv granted* 15 NY3d 854 [2010]).

As argued by the defendant in his reply brief, those cases are distinguishable from the case at bar because the issue therein was whether a defendant who violated parole and was subsequently returned to the custody of DOCS, i.e., reincarcerated as a parole violator, was eligible to apply for resentencing under the 2009 DLRA. In contrast, although the defendant herein has been released to parole, he has *not* been reincarcerated as a parole violator.

Notably, to the extent that the aforementioned cases, as well as the case of *People v Santiago* (77 AD3d 407 [2010], *lv granted* 16 NY3d 799 [2011]), appear to state that a defendant who has been released on parole is "not in custody" and, thus, not eligible for resentencing, this Court recently disagreed with the First Department's interpretation of the statute and has declined to follow the decisions in *People v Pratts* and *People v Paulin* (*see People v Phillips*, 82 AD3d 1011 [2011], *lv granted* 16 NY3d 834 [2011]; *see also People v Straub*, 83 AD3d 1105 [2011]; *People v Johnson*, 83 AD3d 734 [2011]).

The starting point of analysis must be the plain meaning of the statutory language, since it is the statutory text which is "the 'clearest indicator of legislative intent' " (*Ragucci v Professional Constr. Servs.*, 25 AD3d 43, 47 [2005], quoting *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see Bluebird Partners v First Fid. Bank*, 97 NY2d 456, 460-461

[2002]; *Janssen v Incorporated Vil. of Rockville Ctr.*, 59 AD3d 15, 28 [2008]). The plain language of CPL 440.46 (1) does *not* state that defendants who were in the custody of DOCS when they applied for resentencing, but were subsequently released from prison, are no longer eligible for resentencing. An individual is statutorily eligible if he or she was in the custody of DOCS *at the time* that he or she applied for resentencing. At the time that the defendant moved to be resentenced, he was, indeed, in the custody of DOCS.

## V. Is the Instant Appeal Academic?

██ Nevertheless, the People assert that the defendant's release to parole renders the instant appeal academic. In this regard, the People primarily rely on the case of *People v Orta* (73 AD3d 452 [2010]). In *Orta*, during the pendency of the appeal, the defendant had been released on parole. The Appellate Division, First Department stated, "[s]ince he is not in custody, he is not presently eligible for resentencing" and, therefore, the appeal is "moot" (*id.* at 452). We find that the instant appeal is not academic on the ground that the defendant is currently on parole. To the extent that the Appellate Division, First Department, held differently in *Orta*, we disagree and decline to follow that holding (*see People v Phillips*, 82 AD3d 1011 [2011]; *Roman v A1 Limousine, Inc.*, 76 AD3d 552, 553 [2010]).

" 'In general an appeal will be considered moot unless the rights of the parties will be directly affected by the determination of the appeal and the interest of the parties is an immediate consequence of the judgment' " (*Matter of Giousos v Giousos*, 73 AD3d 775, 775-776 [2010], quoting *Matter of Hearst Corp. v Clyne*, 50 NY2d 707, 714 [1980]). The rights of the defendant herein are "directly affected" by the determination of the appeal. Essentially, the defendant is claiming that the Supreme Court erred in not reducing his sentence for the purpose of "releasing him from any further constraints." For instance, under the applicable determinate sentencing range, the court could have imposed the minimum of two years' incarceration and 1½ years' postrelease supervision. Instead, the defendant is presently serving the remainder of his 4½-to-9-year sentence while under parole supervision. "A convicted person released from incarceration on parole continues to serve his or her sentence while on parole and earns credit toward the maximum expiration date of the sentence unless and until the Division of Parole declares that person to be delinquent and revokes pa-

role" (*Matter of Oriole v Saunders*, 66 AD3d 280, 281 [2009]; *see* Penal Law § 70.40 [1], [3] [a]; *People ex rel. Petite v Follette*, 24 NY2d 60, 63 [1969]).

This Court will not presume or speculate upon what the future may hold for this defendant. It will, however, apply reasonableness and practical common sense to the resolution of the issues presented. The defendant has not fulfilled or completed the quid pro quo which society and the rule of law imposed as a result of his criminal conviction. Simply stated, he is not "free and clear" of all of the consequences of his sentence.

As an additional consideration, in *Orta*, the Appellate Division, First Department, stated, "we do not find applicable the exception to the mootness doctrine set forth in *Matter of Hearst Corp. v Clyne* (50 NY2d 707, 714-715 [1980])" (73 AD3d at 452). In *Matter of Hearst*, the Court of Appeals articulated that "an exception to the doctrine discloses three common factors: (1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant or important questions not previously passed on, i.e., substantial and novel issues" (50 NY2d at 714-715). The instant case falls squarely within the parameters in *Matter of Hearst*.

## VI. The Resentence Proposed by the Supreme Court

█ On the merits, however, the Supreme Court's proposed resentence, consisting of concurrent determinate terms of imprisonment of seven years, to be followed by a three-year period of postrelease supervision, was entirely appropriate.

Upon due consideration of all of the relevant facts and circumstances, including (1) the defendant's extensive prior criminal history, which, among others, comprises five felony offenses; (2) the defendant's multiple prior parole revocations; and (3) the defendant's five infractions while incarcerated, consisting of two tier III and three tier II infractions, the Supreme Court's proposed sentence was reasonable. It properly took into account the fact that the defendant had made some positive attempts at rehabilitation, while concomitantly recognizing that he had a prison disciplinary record and a long-term criminal history. Accordingly, under the facts of this case, a reduction of the resentence proposed by the Supreme Court is not warranted (*see People v Medina*, 81 AD3d 853 [2011]; *People v Schreter*, 50 AD3d 930 [2008]; *People v Almanzar*, 43 AD3d 825, 826 [2007]; *People v Suitte*, 90 AD2d 80 [1982]).

## VII. Conclusion

In sum, we reject the People's contention that the instant appeal has been rendered academic because the defendant had been released from custody and is under parole supervision. The defendant's release to parole supervision did not affect his eligibility to apply for resentencing under the 2009 DLRA. At the time of the motion for resentence, the defendant was in the custody of DOCS.

Significantly, the fact that the defendant is eligible to apply for resentencing under the 2009 DLRA does not mean that he will be "entitled" to a further reduction. The 2009 DLRA does not require or mandate a resentence to a lesser term as the sine qua non of a defendant's invocation of the statute nor does it convey a right, privilege, or entitlement to a de facto reduction in a resentence.

Accordingly, upon consideration of all of the relevant facts, a further reduction of the resentence proposed by the Supreme Court is not warranted. The order is affirmed and, pursuant to the 2009 DLRA, we remit this matter to the Supreme Court, Queens County, to afford the defendant an opportunity to withdraw his application for resentencing before any resentence is imposed (*see* CPL 440.46 [3]; L 2004, ch 738, § 23).

DICKERSON, LOTT and ROMAN, JJ., concur.

Ordered that the order is affirmed, and the matter is remitted to the Supreme Court, Queens County, for further proceedings in accordance herewith.