[5 NYS3d 216]

THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDUARDO BAEZ, Respondent, v SUPERINTENDENT, QUEENSBORO CORRECTIONAL FACILITY, et al., Appellants.

Second Department, March 4, 2015

### APPEARANCES OF COUNSEL

*Eric T. Schneiderman, Attorney General*, New York City (*Richard Dearing* and *Bethany Davis Noll* of counsel), for appellants.

*Seymour W. James, Jr.*, New York City (*Robert Newman* of counsel), for respondent.

### OPINION OF THE COURT

RIVERA, J.P.

In 1993, the petitioner was convicted of conspiracy in the second degree and two counts of criminal sale of a controlled substance in the second degree. The indeterminate sentence imposed on the conspiracy in the second degree conviction was directed to run concurrently to the indeterminate sentences imposed on the criminal sale of a controlled substance in the second degree convictions. In 2009, the Division of Parole terminated the petitioner's drug-related sentences pursuant to Executive Law former § 259-j (3-a), which was enacted as part of the 2004 Drug Law Reform Act (hereinafter the 2004 DLRA). That provision allowed for early termination of indeterminate sentences imposed on certain drug-related offenses for those persons who had completed three years of unrevoked parole. The issue presented on the instant appeal is whether the petitioner was entitled to the early termination of the sentence imposed on the conspiracy in the second degree conviction on the ground that it merged with the sentences imposed on the

drug-related convictions. For the reasons that follow, we conclude that the petitioner was not entitled to the early termination of the sentence imposed on the conspiracy in the second degree conviction.

## Factual and Procedural Background

The petitioner, who was "a manager in a drug ring," sold three ounces of cocaine and conspired to "murder a rival drug leader" (*Matter of Baez v Dennison*, 25 AD3d 1052, 1052 [2006]). By two separate judgments, both rendered April 7, 1993, the petitioner was convicted of conspiracy in the second degree and two counts of criminal sale of a controlled substance in the second degree. With regard to the conspiracy in the second degree conviction, the petitioner was sentenced to an indeterminate term of imprisonment consisting of $8^{1}/_3$ to 25 years. As to the criminal sale of a controlled substance in the second degree convictions, he was sentenced to consecutive indeterminate terms of imprisonment consisting of 8 years to life and $4^{1}/_2$ years to life, respectively. The sentence imposed on the conspiracy conviction was directed to run concurrently with the sentences imposed on the drug-related convictions.

On July 25, 2006, the petitioner was released to parole supervision. After the petitioner successfully completed three years of parole supervision without violation, the Division of Parole terminated the sentences imposed on the petitioner's two drug-related convictions, effective July 28, 2009. The termination of those sentences was pursuant to Executive Law former § 259-j (3-a), recodified as Correction Law § 205 (4) (*see* L 2011, ch 62, § 1, part C, § 1, subpart A, §§ 32, 38-g). Executive Law former § 259-j (3-a) directed the Division of Parole to "grant termination of sentence after three years of unrevoked presumptive release or parole to a person serving an indeterminate sentence for a class A felony offense defined in" Penal Law article 220 (*People ex rel. Speights v McKoy*, 88 AD3d 1039, 1040 [2011] [internal quotation marks omitted]). Executive Law former § 259-j (3-a) was enacted as part of the 2004 DLRA (L 2004, ch 738). "Essentially, the 2004 DLRA established a new sentencing structure for laws that had been enacted in 1973 and were commonly referred to as the Rockefeller Drug Laws" (*People v Overton*, 86 AD3d 4, 11 [2011]). As relevant to this appeal, the Division of Parole did not terminate the sentence imposed on the petitioner's conspiracy in the second degree conviction. Instead, the petitioner continued under pa-

role supervision with regard to that conviction. The Division of Parole recalculated the petitioner's sentence to modify the "Maximum Expiration" date, which had originally been life imprisonment based upon his drug sale convictions, to February 9, 2017, based on the 25-year maximum term of the conspiracy in the second degree sentence.

On September 16, 2009, the petitioner was arrested by federal agents in New Jersey and charged in federal court with conspiring to possess and distribute cocaine (see 21 USC § 846). He pleaded guilty and was sentenced to 48 months in prison (later reduced to 46 months), to be followed by four years of postrelease supervision. During his imprisonment, New York authorities lodged a parole violation detainer against him. On December 19, 2012, upon his release from federal custody, the petitioner was taken into New York's custody pursuant to the detainer. On January 16, 2013, he pleaded guilty to violating parole, based upon his federal conviction. The Division of Parole imposed a delinquent time assessment of time served plus 90 days. He was expected to be released from incarceration on April 16, 2013. The maximum expiration date on the sentence relating to the 1993 conspiracy in the second degree conviction was recalculated to May 3, 2020.

### The Instant Proceeding

On or about March 4, 2013, the petitioner filed a petition for a writ of habeas corpus against the Superintendent of the Queensboro Correctional Facility and the New York State Department of Corrections and Community Supervision (hereinafter DOCCS and together the appellants). In the verified petition, the petitioner asserted that the sentence relating to the 1993 conspiracy in the second degree conviction should have been terminated in 2009 when the sentences imposed on the drug-related convictions were terminated. Specifically, the petitioner argued that, pursuant to Penal Law § 70.30 (1) (a), the conspiracy in the second degree sentence merged with the longer drug-related sentences, each of which carried a maximum term of life. Accordingly, he contended that the sentence imposed on his conspiracy in the second degree conviction should be terminated and the time assessment imposed on the parole violation should be vacated. Finally, in the event that the petitioner was released to parole supervision before a decision was made in this matter, the petitioner requested that the writ of habeas corpus be converted into a proceeding pursuant to CPLR article 78.

In opposition, the appellants asserted that terminating the sentence imposed on the petitioner's conspiracy in the second degree conviction would give him a windfall not intended by the Legislature and not required by any statutory language. They argued that Executive Law former § 259-j (3-a) and the 2004 DLRA did not give the court the authority to terminate any sentence other than the sentences relating to the defendant's drug convictions. Thus, they contended that the early sentence termination provision did not apply to the sentence relating to the petitioner's conviction of conspiracy in the second degree. Further, the appellants disputed the petitioner's contention that termination of the conspiracy sentence was required by Penal Law § 70.30 (1) (a).

## The Amended Judgment Appealed From

In the amended judgment appealed from, upon granting the petitioner's request to convert this proceeding into one pursuant to CPLR article 78 in the nature of mandamus, the Supreme Court granted the petition, finding that the sentence relating to the petitioner's conviction of conspiracy in the second degree had merged with the drug-related sentences and, thus, should have been satisfied by discharge on July 28, 2009. Specifically, the court determined that the drug-related sentences "had the longest unexpired time to run" and the conspiracy sentence merged with the drug-related sentences pursuant to Penal Law § 70.30 (1). Accordingly, the Supreme Court remitted the matter to DOCCS to (1) administratively terminate the sentence relating to the petitioner's conspiracy conviction as of July 28, 2009, (2) vacate, with prejudice, the parole violation warrant lodged against the petitioner, and (3) vacate, with prejudice, the delinquent time assessment imposed thereon.

## Statutory Framework

We begin our analysis by providing a brief overview of the relevant statutes and their interplay.

"In 1973 the New York State Legislature passed a series of bills that came to be known as the Rockefeller Drug Laws (*see* L 1973, chs 276, 277, 278, 676, 1051)" (*People v Brown,* 115 AD3d 155, 156 [2014], *lv granted* 23 NY3d 961). The legislature enacted the 2004 DLRA "to grant relief from what [it] perceived as the 'inordinately harsh punishment for low level non-violent drug offenders' that the Rockefeller Drug Laws required"

(*People v Paulin*, 17 NY3d 238, 244 [2011], quoting Assembly Sponsor's Mem, Bill Jacket, L 2004, ch 738 at 6; *see People v Norris*, 20 NY3d 1068, 1072 [2013]; *People v Acevedo*, 14 NY3d 828, 831 [2010]; *People v Brown*, 115 AD3d at 156). With respect to offenses committed on or after January 13, 2005, the 2004 DLRA, inter alia, replaced lengthy indeterminate sentences with determinate sentences and reduced mandatory minimum prison sentences for nonviolent felony drug offenders (*see* L 2004, ch 738, § 36 [adding Penal Law §§ 70.70, 70.71]; *see People v Overton*, 86 AD3d at 11). Although the reduced sentencing provisions were made prospective only, the law included other provisions applicable to defendants who had committed their crimes prior to its effective date designed to afford them similar sentencing relief, such as the ability to obtain early termination of parole (*see People v Utsey*, 7 NY3d 398, 403 [2006]). To that end, Executive Law former § 259-j (3-a), which was enacted as part of the 2004 DLRA (L 2004, ch 738, § 37), and has since been recodified in Correction Law § 205 (4) (*see* L 2011, ch 62, § 1, part C, § 1, subpart A, §§ 32, 38-g), provided that "[t]he division of parole must grant termination of sentence after three years of unrevoked parole to a person serving an indeterminate sentence for [certain drug-related felony offenses]," which would include the petitioner's convictions of criminal sale of a controlled substance in the second degree (*see* Executive Law former § 259-j [3-a]; Penal Law § 220.41).

Of further relevance to this appeal, Penal Law § 70.30 governs the question of " 'whether a prisoner who has been given multiple sentences is subject to all his [or her] sentences for the duration of his [or her] term of imprisonment' " (*People v Brinson*, 21 NY3d 490, 495 [2013], quoting *People v Buss*, 11 NY3d 553, 557 [2008]). The Court of Appeals has characterized Penal Law § 70.30 (1) as "provid[ing] for a method whereby two or more sentences are made into one" and embodying "the proposition that concurrent sentences and consecutive sentences yield single sentences, either by merger or by addition" (*People v Buss*, 11 NY3d at 557). That statute states, in pertinent part,

> "An indeterminate . . . sentence of imprisonment commences when the prisoner is received in an institution under the jurisdiction of the state department of corrections and community supervision. Where a person is under more than one inde-

terminate . . . sentence, the sentences shall be calculated as follows:

"(a) If the sentences run concurrently, the time served under imprisonment on any of the sentences shall be credited against the minimum periods of all the concurrent indeterminate sentences . . . The maximum . . . terms of the indeterminate sentences . . . shall merge in and be satisfied by discharge of the term which has the longest unexpired time to run" (Penal Law § 70.30 [1]).

### Application of These Statutes

In the instant case, on July 28, 2009, upon the completion of the petitioner's unrevoked parole for a period of three years, the Division of Parole terminated the sentences imposed on the two 1993 convictions for criminal sale of a controlled substance in the second degree, pursuant to Executive Law former § 259-j (3-a). At the time when the petitioner derived the benefit of Executive Law former § 259-j (3-a), he had already served approximately 16 years of the sentences imposed, which had a maximum of life. Under that statute, the Division of Parole was mandated to grant termination of the petitioner's drug-related sentences, as the petitioner had completed three years of unrevoked parole.

■ The application of Executive Law former § 259-j (3-a) to this petitioner did not squarely fit within the express purpose of the 2004 DLRA. The 2004 DLRA was intended to grant specific relief to a clearly identified and circumscribed class, namely, "low level non-violent drug offenders" (*People v Paulin*, 17 NY3d at 244 [internal quotation marks omitted]). A "manager in a drug ring" cannot be deemed to be the low level offender contemplated by the statute. Further, it is unreasonable to perceive someone convicted of conspiracy to murder as "nonviolent."

Notwithstanding the foregoing, the petitioner seeks more than the benefit heretofore conferred upon him by the 2004 DLRA and Executive Law former § 259-j (3-a). He seeks, in effect, to bootstrap the sentence imposed on the conspiracy conviction to the sentences imposed on the drug-related convictions in an attempt to discharge the remaining term thereof. However, this attempt must fail for the following reasons.

■ First, Executive Law former § 259-j (3-a) applies only to the specific drug-related felony offenses set forth in articles

220 and 221 of the Penal Law (*see* Correction Law § 205 [4]). That statute cannot be reasonably construed to terminate the petitioner's sentence on the conspiracy conviction, a non-drug-related conviction. The outcome sought by the petitioner is contrary to established precedent. Courts applying the DLRA are "not given the discretion to fashion new sentences or add terms of imprisonment, but are constrained to make an existing sentence determinate in the manner dictated by the DLRA" (*People v Norris*, 20 NY3d at 1072; *see People v Acevedo*, 14 NY3d at 831).

■ Second, we disagree with the petitioner's reading of Penal Law § 70.30 (1), which the Supreme Court found persuasive. In this regard, the petitioner claimed that sentences originally imposed on the criminal sale of a controlled substance in the second degree convictions, namely, indeterminate terms of imprisonment consisting of 8 years to life and 4½ years to life, respectively, were longer than the sentence imposed on the conspiracy conviction, which was 8⅓ to 25 years. The petitioner then contended that, under the merger rule enunciated in Penal Law § 70.30 (1) (a), the aforementioned sentences were merged into a single sentence measured by the length of the term with the longest time to run. The express language of Penal Law § 70.30 (1) (a) states that the maximum terms shall "be satisfied by discharge of the term which has the longest unexpired time to run." Significantly, the petitioner and the Supreme Court failed to recognize that, at the time that he became eligible for relief under Executive Law former § 259-j (3-a), none of the terms had expired or been discharged. The application of Executive Law former § 259-j (3-a) operated to effectively shorten the maximum term of his drug-related sentences (i.e., life) to the approximately 16 years that the petitioner served. Thus, upon the application of the early-termination provision under Executive Law former § 259-j (3-a), the maximum term of his sentence on the conspiracy conviction, which was 25 years, had the longest unexpired time to run (*see* Penal Law § 70.30 [1] [a]).

The Supreme Court's reliance upon *Matter of Walker v Dennison* (36 AD3d 89 [2006]) is entirely misplaced. In *Walker*, the Appellate Division, Third Department, held that Executive Law former § 259-j (3-a) applied to terminate the petitioners' drug-related sentences, and the non-drug-related sentences were satisfied by the discharge of the longer drug-related sentences. In *Walker*, however, the petitioners had already served

more than the maximum prison terms originally imposed for their non-drug-related crimes when they applied to the Division of Parole for termination of their sentences pursuant to Executive Law former § 259-j (3-a) (*see id.* at 90). In contrast, as indicated above, in 2009, when the petitioner's drug-related sentence was terminated pursuant to Executive Law former § 259-j (3-a), he still owed time on the sentence imposed for the conspiracy conviction.

■ Third, as argued by the appellants, the Supreme Court's determination would, in fact, confer a windfall on the petitioner. A finding that the petitioner's unexpired non-drug-related sentence was satisfied would undermine the salutary aims of the 2004 DLRA and Executive Law former § 259-j (3-a) so as to relieve him from serving a sentence unrelated to the DLRA. It would effectively shorten the term of the non-drug-related sentence and forgive his remaining time on that conviction. His interpretation would permit parolees to obtain early termination of non-drug-related sentences, the maximum term of which had not yet expired, simply because they were imposed to run concurrently with drug-related sentences that later became subject to Executive Law former § 259-j (3-a). This Court will not permit the petitioner to convert a shield into a sword.

Therefore, the petitioner was not entitled to termination of the sentence imposed on his conspiracy conviction, and the Supreme Court erred in granting the petition.

Accordingly, the amended judgment is reversed, the petition is denied, and the proceeding is dismissed.

SGROI, COHEN and BARROS, JJ., concur.

Ordered that the amended judgment is reversed, on the law, without costs or disbursements, the petition is denied, and the proceeding is dismissed.